HENRY A. RENSENHOUSE v. ISAAC W. SEELEY.

| 72 | 603 |
|----|-----|
| 128 | 90 |
| 72 | 603 |
| 155 | ²694 |

*Mutual benefit associations—Foreign corporations—Right to carry on business in Michigan—Life insurance.*

1. How. Stat. § 4225, was not intended to nor does it apply to co-operative and mutual benefit associations.

2. Mutual benefit and co-operative associations, whether corporations or mere voluntary associations, are, strictly speaking, insur-

ance organizations, whenever, in consideration of periodical contributions, they engage to pay the member or his designated beneficiary a benefit upon the happening of a specified contingency.

3. An insurance contract is an agreement by which one party, for a consideration, promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest.

4. In this case it is held that the "Fraternal Alliance," an Illinois corporation organized to establish a secret order, which shall cultivate social and fraternal relations among its members, and furnish aid to those of them that may become sick or disabled, but no annual dues or premiums to be required, and all aid and assistance to be by voluntary subscription, comes within the exception of section 25 of Act No. 187, Laws of 1887, and has a right to do business in this State without being in any manner under the control of the Commissioner of Insurance.

Error to St. Joseph. (Loveridge, J.) Argued October 3, 1888. Decided November 28, 1888.

*Assumpsit* under How. Stat. § 4225. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*S. M. Constantine* (*W. G. Howard,* of counsel), for appellant.

*Dallas Boudeman,* for defendant.

[The controlling questions in this case are fully discussed in the opinion, and, as they involve the construction of the various statutes cited, their restatement from the briefs of counsel is omitted.—REPORTER.]

LONG, J. This is an action of *assumpsit* brought under section 4225, How. Stat., to recover money paid defendant as agent of the Fraternal Alliance, a corporation organized under the laws of the state of Illinois.

Suit was commenced by summons before a justice of the peace of St. Joseph county. The declaration was on the common counts in *assumpsit*. Plea, general issue,

with notice of special matters of defense. Plaintiff recovered judgment in a justice's court. Defendant appealed to the circuit court for St. Joseph county, where the cause was tried before the court without a jury, and defendant had judgment for costs.

On the trial the court found the following facts and conclusions of law:

"1. That the Fraternal Alliance is a corporation organized under the laws of the state of Illinois, and that it was so organized on or about the 30th day of September, A. D. 1885, and is located in the city of Chicago and county of Cook.

"2. That the charter or articles of association of said corporation declare that the object for which it is formed is to establish a secret order, which shall cultivate social and fraternal relations among its members, and furnish aid to those of them that may become sick or disabled; no annual dues or premiums to be required, and all aid and assistance to be by voluntary contributions.

"3. That said association proceeded to organize a supreme body under such charter, known as the 'Supreme Council of the Fraternal Alliance,' a social order, and adopted a constitution and by-laws for its government.

"4. That said association entered upon its use and exercise of its privileges, and has continued to use and exercise them, receiving initiation fees and dues, and paying losses and benefits.

"5. That on or about the 15th day of June, 1886, by virtue of said association and supreme council, at Chicago, a subordinate council, known as 'No. 32,' was organized at Three Rivers, in said county of St. Joseph, with a membership at one time of about 90 persons, among whom were the plaintiff and defendant in this suit; that said council No. 32 was organized by the appointment of a chairman, a deputy, and a board of managers; that the defendant was such deputy, and as such it was his duty to secure members of said Fraternal Alliance order, and to receive and remit to the said association at Chicago the monthly dues or voluntary contributions of the members, and one dollar of each initiation fee; of the remaining four dollars of such initiation fee, one dollar was to be paid to the examining surgeon, and three dollars retained by the deputy for his services.

" 6. That on the 29th day of September, 1886, the plaintiff became a member of said Council No. 32, and of said order of Fraternal Alliance, and received a certificate of membership, which recited, among other things, that in consideration of a voluntary contribution of one and 50 one-hundredths dollars to the funds of said order, to be made on or before the 25th day of each and every month during the continuance of this membership, Henry Augustus Rensenhouse shall, after the expiration of sixty days from the date of this certificate, when temporarily disabled from prosecuting his usual vocation by reason of sickness or disability, be entitled to receive from the benefit fund of the order a weekly benefit of twelve and 50 one-hundredths dollars. The certificate contains a further provision that, in the case of the death of the plaintiff, the wife may continue to make voluntary contributions, for the purpose of participating in the equalization of benefits at the end of seven years, or in lieu thereof receive, within fifteen days after furnishing proof of death, the amount contributed by said member to the benefit fund of the order, less the amount of benefits received by him.

" 7. That the plaintiff paid to the defendant, as deputy or agent of said association, an initiation fee of $5.00, and his monthly dues for nine months, from the 25th day of October, 1886, to the 25th of June, 1887, of one and 50 one-hundredths dollars each month, a receipt being given at the time of each monthly payment of dues in form following, viz.:

" Received of H. A. Rensenhouse, Council No. 32, certificate No. 319, one and 50 one-hundredths dollars, as his voluntary contribution to the funds of the order of the Fraternal Alliance for the month of October, 1886.

" H. B. CHANDLER, Secretary.

"I. W. SEELEY, Deputy."

" 8. That said Fraternal Alliance deposited the moneys paid to it for dues and other voluntary contributions with the Corn Exchange Bank of Chicago, and that the defendant remitted to said bank the dues received by him from said plaintiff, and such part of the membership fee not retained by him for the purposes above stated.

" 9. That at the time of the commencement of this suit the said Fraternal Alliance was doing business in the State of Michigan, but not by virtue of or under any

authority granted or issued to it by the Commissioner of Insurance of said State, and at the time the said money was paid by the plaintiff to the defendant, and before this suit was commenced, the treasurer of the State of Michigan had no deposit from the said Fraternal Alliance, as is contemplated by section 4225, How. Stat.

"That after the formation of said corporation, the Fraternal Alliance, the officers thereof applied to the Commissioner of Insurance aforesaid for license or permission to do business in this State, if he deemed it such a company as required a license or permission, and said Commissioner never granted any license or permission, alleging as a reason that he did not consider it to be such a corporation as was required, under the laws of this State, to have any license or permission granted.

"10. This action was brought to recover the money paid by the plaintiff to the defendant for his voluntary contribution or monthly dues to the Fraternal Alliance, and the amount paid by him to become a member thereof, in all the sum of eighteen and 50 one-hundredths dollars."

Conclusions of law:

"1. That the said Fraternal Alliance is not a life insurance company, within the meaning of section 4225, How. Stat., in requiring a deposit of $100,000 securities with the State Treasurer, nor is it an insurance company, within the designation of section 4244 of said statutes, and amendments thereof, requiring a like deposit.

"2. The moneys paid by the plaintiff, which he now seeks to recover, were voluntary contributions or payments made by him as a member of the order of the Fraternal Alliance to the defendant as a member and officer of such association, and he cannot maintain this action to recover them back.

"3. The defendant should have judgment against the plaintiff for his proper costs and charges."

Judgment was entered in said court on the above findings, on February 27, 1888. Afterwards, and on March 20, 1888, the said court, on the request of counsel for defendant, made the following as an additional finding in the cause:

"The Fraternal Alliance is a fraternal society, which

is under the supervision of a supreme body, and furnishes relief to its members by the payment to them of weekly sums while they are disabled, by reason of sickness, from carrying on their usual business; and that it neither pays any commissions nor employs any paid agents, the moneys which are paid by its members as a membership fee being the only money used for the payment of its medical examiners, solicitors, and others engaged in the management of its business; that said Fraternal Alliance is not incorporated under any act of this State."

Exceptions were filed to these findings. Plaintiff brings the case to this Court by writ of error.

It appears that in September, 1885, this corporation was formed under the laws of the state of Illinois. The management of its affairs is placed in a board of seven directors, and its object, as stated in its articles, is—

"To establish a secret order, which shall cultivate social and fraternal relations among its members, and furnish aid to those of them that may become sick or disabled; no annual dues or premiums to be required, and all aid and assistance to be by voluntary contribution."

It is contended by defendant's counsel that this company is not an insurance company, within the statutes of this State, but that it is a fraternal order, and chartered as such under the laws of the state of Illinois, and that its business is carried on in accordance with its charter, and the plan set forth in its constitution' and by-laws, and the certificate of membership; that the object of the association is not speculative, but social and benevolent in its relations, furnishing aid to those that may become sick or disabled, and that only indirectly does it pay a death loss.

The only important question involved in the controversy is, is it, in effect, a life insurance company, within the meaning of chapter 131 of Howell's Statute? Section 4225 of said chapter 131 reads as follows:

"No company organized or existing under any author-

ity whatsoever, other than the statutes of this State, shall be at liberty to transact the business of life insurance within this State until such company, in addition to the requirements now made by law, shall have deposited with the State Treasurer one hundred thousand dollars of the like securities required to be deposited by companies formed under this act, which shall be held as security for any losses," etc.

This section further provides, however, that companies having deposits in other states for the protection of policy-holders, etc., may be licensed to transact business of life insurance within this State on the production of the certificate from the proper officer of such state, etc. This section also inflicts a penalty for taking insurance before such deposits are made, or such license granted on the certificate from the foreign state. This section further provides:

" And any person who shall have paid, to any agent of such company, any premium moneys before such securities are deposited, shall be entitled to recover the same back from such agent, or, at his option, from the company, by action of *assumpsit*, to be brought at any time within six years after such payment."

Section 4244 of said chapter 131 defines life insurance as follows:

" That all corporations, associations, partnerships, or individuals, doing business in this State, under any charter, compact, agreement, or statute of this or any other state, involving an insurance, guaranty, contract, or pledge for the payment of annuities or endowments, or for the payment of moneys to families, or representatives of policy or certificate holders or members, shall be considered and deemed to be life insurance companies, within the meaning of the laws relating to life insurance within this State," etc.

Section 4246 of said chapter excepts mutual benefit, co-operative, and other benevolent associations organized or to be organized within this State, under and by virtue

72 MICH.—39.

of the provisions of an act entitled "An act to provide for the incorporation of co-operative and mutual benefit associations," approved April 3, 1869.

It is not claimed, however, that this company is organized under, or comes within, the provisions of section 4246. But by section 27 of Act. No. 187, Laws of 1887, section 4246 was made applicable to all mutual benefit and co-operative associations, whether organized under the laws of this State, or in some foreign state or foreign country. If it is an insurance company, coming within the definition given by the Legislature under section 4244, above quoted, it is not protected by the provisions of section 4246, as the exceptions therein contained relate solely to associations organized or to be organized within this State under the provisions of the act of 1869, but is protected by the amendment of 1887, above referred to.

At the legislative session of 1883, however, an act was passed—

"Authorizing foreign co-operative corporations or associations to transact business in this State." Act No. 181, Laws of 1883.

Section 1 of this act provides—

"That any corporation or association organized, or that may hereafter be organized, under the laws of any other state, to insure lives on the assessment plan, or any corporation or association so organized, carrying on the business of life or accident insurance on the assessment plan, shall be licensed by the Commissioner of Insurance upon payment to him, for the benefit of the State, a fee of twenty-five dollars, to do business in this State."

This section further provides that such corporation shall first deposit with the Commissioner of Insurance a certified copy of its charter or articles of incorporation, a statement of its business for the preceding year, etc., and satisfy the Commissioner that it has the ability to pay

the beneficiaries of the members its policies or certificates to the full limit named therein, etc.

Section 2 provides that, upon complying with the provisions of section 1 of this act, the Commissioner shall issue to such corporation a certificate of authority to do business in this State.

Section 5 of the act, among other things, provides:

"This act shall not be construed so as to apply to any secret or fraternal society, lodge, council, or association, now doing business in this State, which is under the supervision of a grand or supreme body, and furnishes insurance to its members, but neither pays any commissions, nor employs any paid agents, whether organized under the laws of this or any other state; but such secret or fraternal societies, lodges, councils, or associations, now doing business in this State, shall be authorized to transact business in this State, and not be subject to the provisions of this or any other act."

Under this act, while some penalties are attached for doing business within the State without having first complied with the provisions of the act, and obtaining the certificate of the Commissioner of Insurance, yet no provision is made for collecting by suit or otherwise from the company or its agents the moneys paid for such insurance.

At the legislative session of 1887, a general revision of the law relative to co-operative and mutual benefit associations was made. This act is entitled—

"An act to revise the laws providing for the incorporation of co-operative and mutual benefit associations, and to define the powers and duties and regulate the transactions of the business of all such corporations and associations doing business within this State." Act No. 187, Laws of 1887.

The first 16 sections of the act relate solely to corporations or associations organized under the act, the manner of their organization and right to do business, etc. Sec-

tion 17 of the act contains substantially the same provisions as are embodied in section 1 of the act of 1883, with some modifications and additions. Section 18 provides for a payment of a fee of $25 to the State, and authorizes the Commissioner of Insurance to issue the certificate to such association authorizing it to do business within this State. Section 25 provides:

"This act shall not be construed to apply to secret or fraternal societies, lodges, or councils now doing business, or that may be hereafter organized, in this State, which are or shall be under the supervision of a grand or supreme body, and secure members through the lodge system exclusively, nor to any association organized solely for benevolent purposes, composed wholly of the members of one occupation, profession, or religious denomination, or fraternal society, their wives or widows, now organized and doing business in this State."

It is evident that section 4225, How. Stat., above quoted, was not intended to apply, and does not apply, to co-operative and mutual benefit associations. This section has reference to that class of life insurance companies that are organized outside of this State, and doing business herein, not on the co-operative or mutual benefit plan, and relates solely to those companies that are required under the same section to deposit $100,000 with the State Treasurer as a guaranty of payment, and a protection to their policy holders; and the recovery of the premiums paid, either from the company or agent, is authorized under this section only when the money is received by the agent or company "before such securities are deposited."

A right of recovery is also given against the company or agent for such moneys paid by the provisions of section 4244, above quoted. This section first defines what corporations, companies, associations, etc., shall be considered life insurance companies, within the meaning of the laws relating to life insurance within this State; and requires

that no such insurance, guaranty, contract, or pledge, etc., shall be made which shall not distinctly state therein the amount of such life benefits, the manner of the payment, the period of the continuance thereof, and the amount of the annual, semi-annual, or quarterly premium, or by which the payment of the life benefit assured shall be contingent upon the payment of assessments made upon surviving members, and not until the securities required of life insurance companies are deposited, nor except in accordance with and under the conditions and restrictions of the statutes now or hereafter regulating the business of life insurance. This section then provides for penalties for soliciting insurance before such conditions are complied with, and provides for recovery in *assumpsit* for the moneys so paid, either from the company or agent, the same as is provided in section 4225. This section is aimed at the form of the policy, as well as giving definition to the term "life insurance companies," and it is very evident it was not intended to effect co-operative and mutual benefit associations, or such companies or associations which are not required to deposit securities with the State Treasurer.

In 1869 the Legislature first authorized the incorporation of co-operative and mutual benefit associations in this State, and by Act No. 104, Laws of 1869, provided the manner of their incorporation, and defined their powers. At the same session the Legislature provided for the incorporation of life insurance companies within this State, defining their powers and duties. Act No. 77, Laws of 1869.

Section 22 of Act No. 77, provided for the recovery of the premium moneys paid from the company or agent, if such moneys were paid to a company not authorized to do business under this act. This act was amended in

1871 by adding three new sections thereto, to stand as sections 27, 28, and 29. Act No. 80, Laws of 1871.

At the extra session of the Legislature in 1872, section 29 was amended, and now stands as section 4244, How. Stat. At the legislative session of 1877, an act was passed—

"To facilitate the organization of mutual benefit and co-operative associations within this State." Act No. 29, Laws of 1877.

It is provided by this act that the act of 1869, and the amendments of 1871 and 1872, shall not be construed so as to include, apply to, or in any wise affect mutual benefit, co-operative, and other benevolent associations, organized or to be organized within this State under the act of 1869.

As we have already seen, section 4225 of Howell's Statutes was not intended to and does not apply to mutual and co-operative associations organized under any law of this State. By Act No. 29, Laws of 1877, it is expressly provided that section 4244 shall not include, apply to, or in any way affect mutual benefit and co-operative associations, organized within this State.

By Act No. 181, Laws of 1883, foreign co-operative corporations and associations were authorized and empowered to do business within this State by the payment of a fee of $25, and filing with the Commissioner of Insurance copies of their articles of incorporation, etc., as before stated. By this act foreign co-operative associations were placed on the same footing as domestic ones, so far as their right to do business in this State is concerned. The act further provides that it should not be construed to apply to secret or fraternal societies, lodges, councils, or associations, now doing business in this State, which are under the supervision of a grand or supreme

body, and furnish insurance to members, but neither pay any commissions. nor employ any paid agents, whether organized under the laws of this or any other state; but such secret or fraternal societies, lodges, councils, or associations, now doing business in this State, shall be authorized to transact business in this State, and not be subject to this or any other act.

The act of 1887, above cited, and from which I have quoted certain sections and paragraphs, revised these different acts from 1869 to 1877, and the amendments thereof, relating to mutual benefit and co-operative associations, as well as the act of 1883, and repeals all acts inconsistent with it, except in so far as they apply to societies and organizations mentioned in section 25 of the act. This exception refers to secret and other societies, under the supervision of a grand or supreme body.

It will be observed from a reading of these statutes that the Legislature of this State recognize several separate and distinct classes of companies or associations as permitted, upon certain conditions, to do life insurance business within this State:

1. Insurance companies organized and existing under the laws of this State.

2. Insurance companies organized under the laws of some other state or territory, or some foreign country, which, upon making deposit of $100,000 in securities, etc., and complying with certain other requirements, may, by obtaining the license or permission from the Commissioner of Insurance, do business within this State.

3. Co-operative and mutual benefit associations organized and existing under the laws of this State.

4. Co-operative and mutual benefit associations organized and existing under the laws of some other state or territory, or some foreign country, which, upon the payment of a fee of $25 to the State, and complying with certain other requirements, may, by obtaining the license or permission from the Commissioner of Insurance, do business within this State.

5. Secret or fraternal societies, lodges, or councils which are or shall be under the supervision of a grand or supreme body, and secure members through the lodge system exclusively, and any association organized solely for benevolent purposes, composed wholly of members of one occupation, profession, or religious denomination, or fraternal society, their wives or widows, now organized and doing business in this State, are wholly exempt from the deposit of securities, the payment of the $25 fee to the State, and the other restrictions and conditions surrounding other corporations and associations, and these companies or societies may do business within this State wherever such societies may be organized, whether within or without this State, and they do not require the certificate or authority of the Commissioner of Insurance to do business within this State.

Even if the association in question in this case, called the "Fraternal Alliance," is an insurance company, it cannot come within the provisions of our statute relating to life insurance companies, either foreign or domestic, requiring the approval of the Commissioner of Insurance, unless it is included within the provisions of section 17 of the act of 1887. This association is under the supervision of a grand or supreme body, and secures its members through the lodge system exclusively.

An examination, however, of the charter and articles of incorporation, and the by-laws, shows that an application must first be presented for membership, in which the applicant must show that he is a good risk in life insurance. In order to join the association, the premium or membership fee of five dollars must be paid, and a medical examination is required. Periodical assessments are made, though they are called voluntary contributions. They are payable, according to the terms of the certificate, on the 25th day of each month, and in default of such payment the certificate of membership is forfeited. In case of accidental injuries or other disabilities, the member is paid a weekly amount during such disability, and

at the death of the member proofs are to be made of such death, and the widow may continue payments and participate in benefits, or, in lieu thereof, receive his share of the funds, less benefits received by him during his life, and, should the member continue to live seven years, he receives a *pro rata* share of the funds unexpended for benefits.

It is true that the association has no salaried officers, but the deputy for each subordinate lodge receives five dollars as the membership fee, paying over to the use of the grand or supreme lodge one dollar, to the examining physician one dollar, and retains three dollars for his own services.

A majority, if not all, of the United States insurance companies, either home or foreign, are only allowed to do business upon compliance with specified conditions. In order, however, to encourage the formation of benefit societies, the advantages of which have been appreciated by legislatures, there is express provision in most, if not all, the states, for the organization of mutual benefit and co-operative associations. These associations, whether corporations or mere voluntary associations, are, strictly speaking, insurance organizations, whenever, in consideration of periodical contributions, they engage to pay the member or his designated beneficiary a benefit upon the happening of a specified contingency. Although they may also partake of the nature of fraternal societies, yet whether the benefit be paid for sickness, or to accumulate a fund out of which payments are to be made to beneficiaries of deceased members, the contract falls within the definition of an insurance contract. That is an agreement by which one party, for a consideration, promises to make a certain payment of money upon the destruction or injury of something in which the other party has

an interest. *Com. v. Wetherbee,* 105 Mass. 149; *Association v. Com.,* 10 Penn. St. 357.

I think the case falls within the exception of section 25 of the Public Acts of 1887. This section is made more broad in its exceptions than the exceptions contained in the act of 1883. Section 25 of the act of 1887 excepts—

"All secret or fraternal societies, lodges, or councils * * * which are or shall be under the supervision of a grand or supreme body, and secure members through the lodge system exclusively."

Section 5 of the act of 1883 excepts all societies enumerated above in section 25, with the limitation, however, that it—

"Neither pays any commissions, nor employs any paid agents, whether organized under the laws of this or any other state."

While it may be treated as coming within the general definition of a life insurance company, and its objects and purposes may be to insure lives, as well as to aid its members in case of sickness or disability, yet the Legislature had the undoubted right to except secret or any other organizations from the general disabilities of the other class of life insurance companies within the State, whether such corporations or associations were organized within or without the State. It is a matter entirely for the Legislature to determine.

It is well settled that corporations of one state have no right to exercise their franchises in another state, except upon the assent of such other state, and upon such terms as may be imposed by the state where their business is to be done. Such conditions are absolutely within the control of the legislature. *People v. Howard,* 50 Mich.

240 (15 N. W. Rep. 101); *Hartford Ins. Co. v. Raymond,* 70 Id. 485 (38 N. W. Rep. 714).

The Legislature has permitted this class of associations, whether organized under the laws of this State or elsewhere, to do business here, without reference to the certificate of the Commissioner of Insurance, or placing them in any manner under the control of the Commissioner. The exception in section 25 of the act of 1887 is broad enough to include the order of the Fraternal Alliance, and hence the plaintiff has no right of recovery.

The judgment of the court below is affirmed, with costs.

The other Justices concurred.