CITIZENS' LIFE-INSURANCE CO. *v.* COMMISSIONER OF INSURANCE.

1. BENEFIT SOCIETIES—LIFE INSURANCE—STATUTES.

   2 Comp. Laws, § 7217, defining the term "life-insurance companies," within the meaning of the statutes; and sections 7221, 7522, providing that the first-mentioned section shall not apply to co-operative and mutual benefit associations,—do not prevent such an association from being considered as a life-insurance company, within a general statute relating to such companies.

2. SAME—DISCRIMINATION BETWEEN POLICY HOLDERS.

   2 Comp. Laws, § 7219, prohibiting life-insurance companies from discriminating between insurants of the same class as to rates, dividends, or benefits, or from paying or allowing any rebate of premium, or other valuable consideration not specified in the policy, as an inducement to insurance, is applicable to co-operative and mutual benefit associations organized under 2 Comp. Laws, § 7497 *et seq.*

---

[1] *I. e.*, the Spencer Electric Light & Power Company's.

3. Same.

Such section (7219) is violated where an insurance company contracts to pay one of its officers a stated percentage of its premium receipts, with the understanding that the same shall be apportioned among certain persons, to be known as a "Board of Reference," as an inducement to their becoming policy holders in the company. *State Life Ins. Co.* v. *Strong,* 127 Mich. 346, followed.

4. Same—Right to Continue Business —Authority of Insurance Commissioner.

Under 2 Comp. Laws, § 7517, providing that, on the filing of the annual statement of a benefit association, if the insurance commissioner shall find that the association is still organized and doing business conformably to law, he shall issue his certificate authorizing it to continue the business, the commissioner may withhold the certificate on finding that the association is allowing rebates in violation of law; and this though the following section provides for the institution of proceedings by the attorney general in such case.

5. Mandamus—When Lies—Proposed Violation of Law.

*Mandamus* is a discretionary writ, and will not issue to enable relator to accomplish a violation of the statute.

*Mandamus* by the Citizens' Life-Insurance Company to compel James V. Barry, commissioner of insurance, to issue a certificate renewing relator's authority to do business. Submitted June 4, 1901. Writ denied July 19, 1901.

*Henry C. Walters* ( *John W. McGrath*, of counsel ), for relator.

*Horace M. Oren*, Attorney General, for respondent.

HOOKER, J. The relator is a domestic co-operative or mutual benefit association, to which the respondent, the State commissioner, has refused to issue a certificate, which in this proceeding it asks a *mandamus* to compel. The relator was organized in October, 1899, under Act No. 187 of the Public Acts of 1887. Tho reason given for such refusal is that, upon investigation required by law, respondent has found that relator is not doing business in

conformity to law, and therefore he is not at liberty to issue such certificate.   A more detailed statement is found in respondent's answer.   It states that the relator, soon after its organization, and prior to June 6, 1900, promulgated a plan of doing business which involved the appointment of a " Board of Reference," as it was called, consisting of an indefinite number of persons, who, in consideration of appointment upon said board, became members and policy holders, with the alleged duty to give such information as they might possess concerning the plans, purposes, methods, and management of the company, etc., and entitled to receive certain compensation from the company, in the shape of a definite percentage of a fund set apart from the premiums for that purpose.   The answer sets up that the respondent is informed and believes that such payment was in the nature of a rebate of the premium upon the policies of the several and respective members of the board, and in violation of section 7219 of the Compiled Laws, commonly called the "Anti-Rebate Law."   It states, further, that respondent's predecessor took the same view of this contract, and forced relator to discontinue the plan; and that thereupon, and on June 6, 1900, relator resorted to a subterfuge to accomplish the same thing, by entering into a contract with one Miller, its president, whereby it agreed to pay to said Miller, for the period of 30 years, in monthly installments, a sum equal to 5 per cent. on its entire gross premium receipts upon policies of insurance, with the contemplation and understanding that Miller should enter into contracts with persons designated by him, to be known as "references," who should receive a *pro rata* proportion of said fund as an inducement to taking insurance, and substantially as a rebate upon their premiums.   The following is a copy of the contract:

" This agreement, made and entered into this sixth day of June, 1900, by and between the Citizens' Life-Insurance Company, a corporation existing under and by virtue of the laws of the State of Michigan, party of the first part,

and Albert Shakespeare Miller, of the city of Detroit, in the county of Wayne and State of Michigan, party of the second part, *Witnesseth:* That whereas the said party of the second part has been chiefly instrumental in organizing the Citizens' Life-Insurance Company, in formulating the plan of insurance adopted by said company, in preparing the articles of incorporation, by-laws, rules, regulations, and forms of procedure, preparing applications for insurance preparatory to a license being granted the company, in securing the co-operation of the other gentlemen connected with said company, and in advancing money on account of expenses of organization and incorporation:

"In consideration whereof the party of the first part, in payment for the services so rendered, hereby agrees to refund to the party of the second part, his heirs, administrators, or assigns, a sum equal to five per cent. of the entire gross premium receipts of said company upon policies of insurance issued by it, to be paid in monthly installments, as said premiums are received, for a period of thirty years from and after the date of the incorporation of said party of the first part.

"In witness whereof the said party of the first part has by its secretary and treasurer, who have been duly authorized so to do, executed this agreement, and has affixed its corporate seal, on the day and year first above named.

[Signed]    "Citizens' Life-Insurance Company,
[Seal.]          "By George B. Miller, Secretary, and
                              "Cyrenus G. Darling, Treasurer.
[Signed]    "Albert Shakespeare Miller."

The answer states further that said Miller proceeded to enter into contracts with policy takers similar in substance and form to the contract previously made by the company, whereby such policy holders receive a payment or rebate of 5 per cent. of their premiums, and that such contracts are still made, and that fraudulent representations are made to obtain them, to the effect that such board of reference will be limited to a small number, viz., 12, and that the *pro rata* proportion of said sum to which each will be entitled will be a considerable amount of money, whereas said contracts are made with half of the policy takers, or more; that relator has been informed of these

facts, if it did not already know them, and persists in operating its said plan. No issue was made upon this answer, and we must take it as true.

Relator contends:

1. That the anti-rebate law does not apply to companies organized under Act No. 187 of the Laws of 1887.

2. That the facts do not show a violation of the anti-rebate law, if it does apply to them.

3. That the law does not permit the insurance commissioner to withhold his certificate when the annual report is filed, but provides for the institution of proceedings by the attorney general.

The first proposition is based upon 2 Comp. Laws, § 7221, which was passed in 1877, and provides that certain sections (*i. e.*, 10 and 29) of an act mentioned (one being section 7217) shall not be construed to apply to or in anywise affect mutual benefit and co-operative associations, organized or to be organized. The anti-rebate law was passed in 1889. 2 Comp. Laws, § 7219. We understand that counsel claim that co-operative and other benevolent associations should not be considered within the term "life-insurance companies," which term is defined by section 7217. The anti-rebate law provides that no "life-insurance company," etc.; so that, if relator cannot be called a life-insurance company, it is not affected by it.

If we give relator the benefit of its contention regarding section 7217, and say that it does not apply to this corporation, we do not necessarily conclude that it is not a life-insurance company. Unless the propriety of calling it a life-insurance company depends only on section 7217, we are not precluded from considering it such. If we treat section 7217 as obliterated or repealed,—and that must be the extent of the effect of sections 7221, 7522,—what is the status of the relator? It may still be a life-insurance company, if its organic act so provides, or, in case that is silent, if it falls within the settled definition of life-insurance companies, which we think that it does, within the authorities cited by counsel for respondent. We quote

from his brief: Bacon, in his work on Benefit Societies and Life Insurance (2d Ed., § 52), says:

"It follows from the foregoing adjudications that all benefit societies, whether corporations or mere voluntary associations, are, strictly speaking, insurance organizations, whenever, in consideration of periodical contributions, they engage to pay the member or his designated beneficiary a benefit upon the happening of a specified contingency. * * * It may be also asserted as a general principle that wherever or whenever a benefit society, paying a benefit to the beneficiaries of its deceased members, claims to be exempt from the operation of certain laws applicable to persons or companies doing a life-insurance business, it can only safely base such claim upon express provisions of its charter or of the statutes exempting similar organizations from such liability. The association may be benevolent and charitable, and only incidentally provide benefits for its members or their beneficiaries; but, nevertheless, when it contracts to pay a certain sum to the appointees of its members upon their decease while in good standing, in consideration of certain contributions made by such members while living, it is doing a life-insurance business. We shall find, as we proceed further to discuss the questions concerning the contracts and liabilities of benefit societies, that many of the principles of the law of life insurance are applied to these societies, because they are in some respects simply life-insurance companies, doing business on a plan only partially different from that of regular life-insurance organizations."

In *Rensenhouse* v. *Seeley*, 72 Mich. 603 (40 N. W. 765), it is said:

"These associations, whether corporations or mere voluntary associations, are, strictly speaking, insurance organizations, whenever, in consideration of periodical contributions, they engage to pay the member or his designated beneficiary a benefit upon the happening of a specified contingency. Although they may also partake of the nature of fraternal societies, yet, whether the benefit be paid for sickness or to accumulate a fund out of which payments are to be made to beneficiaries of deceased members, the contract falls within the definition of an insurance contract; that is, an agreement by which one

party, for a consideration, promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest.   *Com.* v. *Wetherbee,* 105 Mass. 149; *Franklin Beneficial Ass'n* v. *Com.,* 10 Pa. St. 357."

*People's Mut. Ben. Soc.* v. *Lester,* 105 Mich. 716 (63 N. W. 977); *Miner* v. *Benefit Ass'n,* 63 Mich. 338, 341 (29 N. W. 852); *Bolton* v. *Bolton,* 73 Me. 299; 1 Joyce, Ins. § 346.

We think the anti-rebate law (section 7219) applies to the relator.

The second point is settled by the recent case of *State Life Ins. Co.* v. *Strong,* 127 Mich. 346 (86 N. W. 825), in which we held a note given for a policy void because the policy was issued in violation of the anti-rebate law. The contract was similar to this one in many respects.

In answer to the third contention it would be enough to say that, inasmuch as upon this record it appears that relator is not complying with the law, we cannot be expected to aid it in its intended violation by the discretionary writ of *mandamus;* but we think that section 7517 provides for the issue of a certificate only when from the statement, and the examination if one is made, the commissioner shall find that the company is still organized and doing business in conformity to law.

The writ is denied, with costs.

The other Justices concurred.