[No. 8211. Department One. November 8, 1909.]

CHARLES H. GRAY, *Respondent*, v. NEAL BOYLE, *Appellant*.[1]

BILLS AND NOTES—BONA FIDE PURCHASER—HOLDER IN DUE COURSE —NEGLIGENCE. One who purchases a note for value before maturity without notice of any defect, is a holder in due course, within Laws 1899, p. 350, §§ 52, 56, and his rights cannot be defeated without proof of actual notice of defects or bad faith, even if he omitted precautions or was negligent.

BILLS AND NOTES—BONA FIDE PURCHASERS—LEGALITY OF CONSID· ERATION—VIOLATION OF STATUTE—EFFECT. Laws 1905, p. 373, pro- hibiting insurance rebates does not invalidate a note given for the premiums in violation of the statute, as against a holder of the note in due course; since it is not the policy of the law to render nego- tiable paper void in the hands of innocent holders where the statute has not so expressly declared.

Appeal from a judgment of the superior court for King county, Frater, J., entered April 12, 1909, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on a promissory note. Af- firmed.

*Dudley G. Wooten*, for appellant.

*Henry S. Noon*, for respondent.

RUDKIN, C. J.—This action was instituted on a promissory note, in the usual form, to recover the sum of $233.36, with interest and stipulated attorney's fees. The note was made payable to the order of C. D. Behan, but was endorsed to the plaintiff for value before maturity. The principal defense interposed was that the note was given in part payment of the annual premium on a policy for $2,000 in the New York Life Insurance Company, of which the payee, Behan, was agent, and that a rebate of $16.64 was allowed to the in- sured, in violation of the anti-rebate act of March 14, 1905, Laws of 1905, p. 373, which provides as follows:

"Section 1. No life insurance company doing business in this state shall make or permit any distinction or discrimina-

[1]Reported in 104 Pac. 828.

tion in favor of individuals between insurants of the same class and equal expectation of life in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any such company or any agent thereof make any contract of insurance, or agreement as to such contract, other than as plainly expressed in the policy issued thereon; nor shall any such company or agent pay or allow, or offer to pay or allow as inducement to insurance, any rebate of premiums payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon; or any valuable consideration or inducement not specified in the policy contract of insurance.

"Sec. 2. Every corporation violating any of the provisions of this act shall be fined in any sum not exceeding five hundred dollars.

"Sec. 3. Every officer or agent of any such corporation who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor and shall be fined in any sum not exceeding five hundred dollars or imprisonment in the county jail not exceeding six months."

The court below found that the plaintiff was a holder of the note in due course, as that term is defined in the negotiable instruments act, and gave judgment according to the prayer of the complaint. From that judgment the defendant has appealed.

We will assume at the outstart that the note was invalid as between the original parties and subsequent holders with notice, by reason of the violation of the anti-rebate act. This leaves but two questions for consideration. First, was the respondent a holder in due course; and second, if so, does the anti-rebate act invalidate the note in his hands.

(1) As already stated, the court found that the respondent was a holder in due course, and this finding is amply sustained by the testimony. A holder in due course is defined by our statute as follows:

"Sec. 52. A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Laws 1899, p. 350.

"Sec. 56. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Laws 1899, p. 350.

The respondent purchased the note for value before maturity, and at the time of his purchase had no notice of any defect or infirmity in the instrument. The chief circumstance upon which the appellant relies to establish *mala fides* is the fact that the respondent knew that Behan was an insurance agent, and that the note was given in whole or in part in payment for an insurance premium. The rule by which the good faith of a holder of negotiable paper is to be determined is thus stated in Crawford's Annotated Negotiable Instruments Law (3d ed.), p. 68:

"The holder is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's right cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide*, his title, according to settled doctrines, will prevail."

This rule is fully supported by the authorities, and, measured by it, the title and good faith of the respondent were not impeached.

(2)   Law writers substantially agree upon the defects which will invalidate commercial paper in the hands of a *bona fide* holder.

"The same doctrine will generally apply to all cases of a *bona fide* holder for value without notice before it comes due, where the original note, or the indorsement thereof, is founded on an illegal consideration; and this, upon the same general ground of public policy, without any distinction between a case of illegality founded in moral crime or turpitude, which is *malum in se*, and a case founded in the positive prohibition of a statute, which is *malum prohibitum;* for, in each case, the innocent holder is, or may be, otherwise exposed to the most ruinous consequences, and the circulation of negotiable instruments would be materially obstructed, if not totally stopped.   The only exception is, where the statute creating the prohibition has, at the same time, either expressly or by necessary implication, made the instrument absolutely void in the hands of every holder, whether he has such notice or not.   There are but few cases in which any statute has created a positive nullity of such instruments, either in England or America.   The most important seem to be the statutes against gaming, and the statutes against usury.   And the policy of these enactments has been brought into so much doubt in our day that in England the rule. as to usury and gaming and some other cases has been changed by recent statutes; and a total repeal, or partial relaxation of it, has found its way into the legislation of America."   Story, Promissory Notes, § 192.

See, also, 3 Kent, p. 80; Daniel, Negotiable Instruments, § 197 (2) and § 198.

Frequent application of this rule may be found in the gaming and usury laws of England and the several states, many of which expressly declare that notes and contracts, the consideration for which is usurious loans or money lost at play, shall be null and void. *Irwin v. Marquett*, 26 Ind. App. 383; *Swinney v. Edwards*, 8 Wyo. 54, and cases there cited.   In all such cases the note is void in the hands of every holder. From this view of the law there is little or no dissent.   On the other hand, the courts agree with equal unanimity that commercial paper is valid in the hands of an innocent holder,

even though the consideration for the note arises out of some contract or transaction prohibited by law, unless the law in express terms declares the instrument void. In *Vallett v. Parker*, 6 Wend. 615, Savage, C. J., said:

"Wherever the statutes declare notes void, they are, and must be so, in the hands of every holder; but where they are adjudged by the court to be so, for failure or illegality of consideration, they are void only in the hands of the original parties, or those who are chargeable with, or have notice of, the consideration."

This distinction runs through all the authorities. *New v. Walker*, 108 Ind. 365, 9 N. E. 386, 58 Am. Rep. 40; *Sondheim v. Gilbert*, 117 Ind. 71, 18 N. E. 687, 10 Am. St. 23, 5 L. R. A. 432; *Union Trust Co. v. Preston Nat. Bank*, 136 Mich. 460, 99 N. W. 399; *Arnd v. Sjoblom*, 131 Wis. 642, 111 N. W. 666, 10 L. R. A. (N. S.) 842; *Sullivan v. German Nat. Bank*, 18 Colo. App. 99, 70 Pac. 162; *Crawford v. Spencer*, 92 Mo. 498, 1 Am. St. 745.

The cases cited by the appellant are not in point, as they all arose between the original parties to the note or their assignees who stood in their shoes. True, the courts said the notes were *void* or *null and void*, but this language must be understood as applying to the case before the court. *Union Trust Co. v. Preston Nat. Bank*, *supra*. In *State Life Ins. Co. v. Strong*, 127 Mich. 346, 86 N. W. 825, and *Heffron v. Daly*, 133 Mich. 613, 95 N. W. 714, cited by the appellant, the court held similar notes invalid as between the original parties, and in *Citizens' Life Ins. Co. v. Commissioner of Insurance*, 128 Mich. 85, 87 N. W. 126, the court said such notes were void, but the same court afterwards held in *Union Trust Co. v. Preston Nat. Bank*, *supra*, that a holder in due course might recover on a check certified in violation of law. Little can be added to the exhaustive discussion of the question under consideration to be found in the case last cited. Counsel argues that the act against rebating will be nullified in a large measure if this court upholds the validity of ne-

gotiable instruments taken in violation of its provisions, but
this question is for the legislature and not for the courts.
For, as said in *Vallett v. Parker, supra,* "It is all important
to the commercial world, that courts do not go in advance of
the legislature in rendering negotiable paper void in the
hands of an innocent endorsee." Any attempt on the part
of this court to advance the legislative policy evinced in the
anti-rebate act, by declaring commercial paper given in vio-
lation of its provisions null and void in the hands of innocent
holders, would conflict with the policy so clearly manifested
in the negotiable instruments act.

We find no error in the record and the judgment is affirmed.

FULLERTON, CHADWICK, MORRIS, and GOSE, JJ., concur.