Nash, C. J.
 

 Fraud vitiates every contract into which it enters, and equity will grant relief by declaring it void and decreeing the instrument executed under it to be delivered up, and this whether the fraud be actual or constructive. The party, however, claiming this relief, must come into Court with clean hands. If he has been
 
 apartieeps criminis
 
 in the concocting of the fraud, equity will leave him to his legal remedy; in other words, will not interfere be
 
 *496
 
 tween the parties, but stand neuter. Relief is not granted where both parties are
 
 truly
 
 in
 
 pari delicto.
 
 Eor enforcing, however, this rule, it is not sufficient that both parties are
 
 in delicto.,
 
 concurring in the unlawful act; they must stand in
 
 pari
 
 delicto, for there may bo other, and very different, degrees of their guilt. Judge Stoet, in the 1st voh of his Equity, section 300, says
 
 “
 
 one party may act under circumstances of oppression, imposition, hardship, undue influence or great inequality of condition, or ago, so that his guilt may be far less in degree than that of his associate in the offense.” In such cases tiie court will grant relief in favor of a plaintiff who was
 
 particeps criminis
 
 as not being in
 
 pari delicto.
 
 Such is the decision of the master of the rolls in
 
 Osborne
 
 v.
 
 Williams,
 
 18 Ves. 382. The master observes, “ Courts of law and equity have held that two parties may concur in an illegal transaction, without being deemed in all respects in
 
 pari delicto.
 
 I consider this agreement as substantially the mere act of the father.” The agreement between the parties was an illegal one, as being in contravention of the post-office act. The parties being both dead, the bill was filed by the representatives of the son, against the representatives of the father, for an account, and decreed,
 
 though
 
 both decedents were
 
 participes criminis.
 

 The same principle applies to cases of usury. If the borrower asks relief, equity will grant it upon such terms as it may prescribe ; and if he has paid the money, ho can recover back the excess of interest, and neither the maxim of
 
 parti-ceps
 
 criminis, nor that of
 
 volenti non fit injuria
 
 applies. He is not in
 
 pari delicto.
 
 He stands in
 
 vinculis,
 
 — is called the slave of the lender, and is compelled to such terms as tlio usurer and his necessities impose upon him ;
 
 Smith
 
 v.
 
 Bromley,
 
 Doug. Rep. 696, in note ; 1 Story’s Eq. sec. 3Q2.
 

 Let us bring this case to the test of those cited. The plaintiff is the mother of Meshach Pinckston, deceased, whose representative, Moses Brown, is before the Court. At the time the notes and deed of trust were executed, the plaintiff was old, infirm, weak of mind, and much diseased and distressed in
 
 *497
 
 body, having, as the testimony shows, recently been struck with paralysis. Her property was not large, but more than sufficient to pay all her debts. "With a view to delay and hinder Mr. Clark in the collection of his debt, the deed of trust was made, all her other debts being provided for in it. This deed is then clearly void as to Mr. Clark — the transaction was illegal, and the plaintiff was
 
 a particeps criminis ;
 
 and as all the debts secured by it have been paid, except the notes made payable to Meshach Pinckston, the plaintiff is entitled to a decree to have it surrendered, together with the property mentioned in it, unless she stands in
 
 pari delicto
 
 with the obligee, Meshach. lie washer oldest son ; all the rest of her children being infants. lie lived with his mother, and they worked the farm together. He managed the whole business, sold the crops, and after furnishing the family, paid the store-bills and other accounts, and appropriated the residue of what was realised, to his own use. Ilis mother had great confidence in his integrity and ability. In the language of one of the witnesses, “ such was his influence over the old lady, that he could make her do just what he wished her to do.”
 

 Such was the relation in which the mother and sou stood to each other. The plaintiff becoming very uneasy about her affairs, Mr. Craigo was sent for to advise with. When he' got there, he found the old lady in bed, weeping and much distressed. She told him she had been informed that Mr. Clark was about to enforce the payment of his debt, and if he did so, it would ruin her. Meshach was there and no one else. She proposed to make a conveyance of her property to her children. The witness proposed she should make a trust, to which she assented. Upon summing up the amount she owed, it was ascertained that, excepting the debt to Clark, the property to be conveyed would considerably exceed in value the amount of the debts. With a view to cover the 'whole of the property, Craige proposed that the plain tiff should execute three notes to her son Meshach, to an amount sufficient for that purpose. The notes were written aud executed and antedated, so as to come within the operation of the deed. No one, up
 
 *498
 
 on reading the proofs in the case, can doubt that Meshach was the person who gave the information that Clark was about to press the collection of the debt due him. Was this information true? What has become of the Clark debt? We hear nothing more of it. Is it still in existence ? Eor aught that appears it is, and no demand of it by Clark, or any other person, is shown. We are justified, then, in considering the information given to her to have been false, and given for the purpose of working upon her fears, and driving her to the execution of the trust. This case is, in some of its leading features, like that of
 
 Osborne
 
 v. Williams,
 
 ubi supra.
 
 There, the concoction of the fraudulent transaction was a father practicing on his son ; here, it is a son practicing on the weakness of an aged and confiding mother. In the case just referred to, the master of the rolls says,
 
 “
 
 I consider this agreement as substantially the mere act of the fatherand the deed of trust in this case, under the evidence, is to be considered as the niere act of Meshach, the sou. Here were imposition, hardship, undue influence and great inequality in age, all brought to bear upon the plaintiff. The mother and son were in
 
 de-
 
 lieto, but not in
 
 pari
 
 delicto, and the plaintiff is entitled to the decree she asks.
 

 Pee Cueiah, Decree accordingly..