EDWARDS v. GOLDSBORO.

(Filed April 10, 1906).

*Municipal Corporations—Illegal Contract—Location of Public Building—Parties in Pari Delicto—Partial Performance—Recovery of Consideration.*

1.  Where plaintiff subscribed and paid to the defendant city a sum of money for the purpose and with the intent of inducing the city to locate its city hall and market house near plaintiff's property, with the view of enhancing the value of his property, and the money was accepted by the city with knowledge of said intent, such a contract is void, being against public policy and founded upon an illegal consideration.

2.  Where the jury found that the plaintiff paid to the defendant city $600, on agreement that the defendant would locate the city hall and market house near plaintiff's property, that the city failed to locate a market as agreed, and that the property of the plaintiff has been enhanced $600 by the erection of the city hall, the court did not err in entering judgment for the defendant.

3.  Public office in a city is a public trust to be administered for the equal benefit and advantage of all the citizens of the municipality and the governing body will not be permitted to contract at any time so as to deprive itself of the free exercise of its judgment and discretion in providing for what may afterwards turn out to be the best interest of all citizens alike.

4.  When a contract belongs to a class which is reprobated by public policy, it will be declared illegal though in that particular instance no actual injury may have resulted to the public, as the test is the evil tendency of the contract and not its actual result.

5.  When parties are *in pari delicto* in respect to an illegal contract, and one obtains advantage over the other, a court will not grant relief; and when they have united in an unlawful transaction to injure another or others or the public, or to defeat the due administration of the law, or when the contract is against public policy, or *contra bonos mores*, the court will not enforce it in favor of either party, unless there is inequality of condition, or one has been induced by undue influence, etc., to make the contract.

6.  To deprive a party of the right to repudiate an illegal contract
    and to recover money already paid thereon, it is not necessary
    that the illegal transaction should have been fully executed, it is
    sufficient for that purpose that there has been a partial fulfill-
    ment of the illegal undertaking by the party against whom the
    action is brought for the recovery of the amount so paid to him.

7.  *Quere:* Whether, when money is paid on an illegal contract, the aid
    of the court can be successfully invoked for its recovery, though
    the other party refuses to perform any part of the agreement,
    so that it is wholly executory on his side.

ACTION by Asher Edwards against The City of Goldsboro,
heard by *Judge G. W. Ward* and a jury, at the January
Term, 1906, of the Superior Court of WAYNE.

The plaintiff, in his complaint, alleged that by an act of the
General Assembly, the defendant was authorized ·to build a
city hall and market house and that plaintiff and other citi-
zens of Goldsboro, who owned real estate therein, and who
believed that the location of the proposed public buildings
near their property would greatly enhance its value, offered to
subscribe and pay to the city divers sums of money, amount-
ing in the aggregate to $1,035, if the city authorities would
erect said buildings on a site near the property of the sub-
scribers, and the offer was made and the money was after-
wards actually subscribed and paid for the purpose and with
the intent of inducing the city to locate the buildings at said
place and with the view of enhancing the value of their prop-
erty and receiving the benefit of the said location, and the
money was accepted by the city with knowledge of said intent.
That plaintiff paid the sum of $600 to the fund for that pur-
pose and that notwithstanding the receipt of the money by
the defendant and its promise in consideration of the sum to
locate both buildings at the said place, the defendant has
erected the city hall as it promised to do, but has failed and,
upon demand, has refused to so erect the market house, but
instead has put up fish stalls which have proved to be a real

detriment to their property. That the erection of the city hall, while of some, is yet of very little benefit, the location and erection of the market house being the main object of their subscription. The plaintiff demanded the return of the $600 paid by him and, upon refusal of the defendant to comply therewith, brought this action to recover the same with interest and the prayer of his complaint is to that effect. The principal allegations of the complaint as to the subscription and its purpose are admitted in the answer, though the defendant denies that it has not complied with the agreement and alleges that the structures erected had improved the value of plaintiff's property. It is not necessary to make further reference to the answer. Issues were submitted to the jury which, with the answers thereto, are as follows: "1. Did the defendant city fail to locate and erect a market near the property of the plaintiff as alleged? Ans. Yes. 2. Did the plaintiff pay to the defendant $600 on agreement that the defendant would locate the city hall and market house near plaintiff's property? Ans. Yes. 3. What amount, if any, has the property of plaintiff been enhanced by the erection of the buildings by the defendant on the location mentioned in the pleadings? Ans. $600." The plaintiff upon the first two findings of the jury prayed, *ore tenus,* for judgment, in the nature of a *mandamus,* to compel the defendant to locate and erect a market house as it had agreed to do. This prayer was refused and plaintiff excepted. The court thereupon entered judgment for the defendant, that it go without day and recover its costs. The plaintiff excepted and appealed.

*Aycock & Daniels* and *W. C. Munroe* for the plaintiff. *Dortch & Barham* for the defendant.

WALKER, J., after stating the case: While the plaintiff, in his complaint, prayed for the judgment to which we think he was legally entitled, instead of a *mandamus,* if the contract

with the city had been valid, yet his cause of action was not properly conceived, and he cannot recover the $600 which he subscribed and paid because the contract with the city was broken by it, as it was void, being against public policy and founded upon an illegal consideration. For the same reason, the third issue was immaterial, as constituting the basis for affirmative relief, in behalf of the defendants. The enhancement in value of plaintiff's property by the erection of the city hall on the site designated in the contract cannot be used as a counterclaim, as the city can gain nothing, either directly or indirectly, by the illegal transaction. It surely cannot benefit in any way by a void contract, for when it is determined that the transaction was invalid, any increase in value of the plaintiff's property becomes a mere incident of the erection of the building at that place and the case stands the same as if the contract had not been made and what the city did was merely a voluntary act on its part. There is nothing, therefore, to support the claim for an allowance because of the enhancement, for the reason already stated and for the reason hereafter assigned for denying relief to the plaintiff.

The form of the issues indicates that the court proceeded in the trial upon the theory that the contract was valid, and had been broken, and for this reason submitted the third issue, whereas the case should have been tried upon the opposite idea, that the contract was void and that no question of damages or other question which presupposed the validity of the contract, such as the enhancement in value of plaintiff's property, was presented. While the third issue was not material in the respect indicated, it is material in another respect, as will hereafter appear. If the contract was void, and plaintiff is not by his relation to the transaction, prevented from recovering, it follows that he would be entitled to judgment, as for money had and received to his use, or for money paid upon a consideration which has failed or upon a condition, compliance with which cannot be enforced, which practically

amounts to the same thing. For the same reason as that just given, plaintiff's prayer for a *mandamus,* or coercive process, was properly denied. This sufficiently disposes of all preliminary matters and brings us to the consideration of the real issues involved.

The case naturally resolves itself into two questions, which require discussion: First, was the contract against public policy, or based upon an illegal consideration, and therefore void? Second, the plaintiff being a party to the illegal transaction, if it was illegal, is he in a position to ask for a return of the money, or is he debarred of a recovery, being *in pari delicto?*

The statute provides that the authorities of a town, whether commissioners or aldermen, shall make such orders for the disposition or use of its property as the interest of the town may require. Revisal, section 2916. Judge Dillon, referring to the general duty of municipal officers, with respect to the affairs which they have in charge, says: "Powers are conferred upon municipal corporations for public purposes; and as their legislative powers cannot, as we have just seen, be delegated, *so they cannot without legislative authority, express or implied, be bargained or bartered away.* Such corporations may make authorized contracts, but they have no power, as a party, to make contracts or pass by-laws which shall cede away, control, or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties. The cases cited mark the scope and illustrate the application of this salutary principle in a great variety of circumstances, and, for the protection of the citizen, it is of the first importance that it shall be maintained by the courts in its full extent and vigor." 1 Dillon Mun. Corp. (4 Ed.), section 97, p. 156. It will be seen, therefore, that public office in a city is a public trust to be administered for the equal benefit and advantage of all the citizens of the municipality and the governing body will not be per-

mitted to contract at any time so as to deprive itself of the free exercise of its judgment and discretion in providing for what may afterwards turn out to be the best interest of all citizens alike, and especially will it not be allowed by an obligatory agreement to discriminate in favor of one citizen or class of citizens as against another entitled to equality of privilege and benefit, even for a valuable consideration. It must at all times retain freedom of judgment, so that its decisions will be influenced only by a regard for the public welfare. We take it that any contract by which it should be attempted to prevent the city authorities from deciding impartially on a matter affecting the general welfare would be unenforcible. If public trustees or officers may by contract divest themselves of any portion of the essential powers intrusted to them, they may just as well alienate all of them, though by degrees, and thus eventually abdicate the exercise of every governmental function. Such agreements are therefore contrary to the true principles upon which society is founded and subversive of all well-regulated government. These propositions would seem to be self-evident. "All agreements for pecuniary considerations, to control the business operations of the government, or the regular administration of justice, or the appointment to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements, and it closes the door to temptation by refusing them recognition in any of the courts of the country." *Tool Co. v. Norris,* 2 Wall., 45; *Cameron v. McFarland,* 4 N. C., 299; Wharton on Contracts, section 403. The leading case of *Martin v. Mayor,* 1 Hill (N. Y.), 546, is one in which the principle was applied and where it appeared that for a consideration, public trustees agreed with a lot owner to make certain improvements which they refused to do. The court held that they might

decline to go forward with the improvement on the ground
that it was injurious or unprofitable to the public and that
in this respect they enjoyed a discretion which individuals
have no power to control and the trustees no power to part
with. It was further said: "To allow that commissioners of
streets and highways may bind themselves by contract to sub-
serve the interests of individuals, would be a clear violation
of public policy. They are officers of municipal corporations
or *quasi* corporations, and in respect to the laying out of
streets and highways are primarily bound to consult the
interests of the community at large." The doctrine there en-
forced was that a contract will not be sustained which tends
to restrain or control the judgment of public officers, which
must always be impartial. But all promises of individuals
to pay a portion of the expenses of public improvements do
not necessarily fall within the principle and may not be void.
The validity of the particular contract will depend of course
upon whether it has the evil tendency to influence the officer
in the discharge of his public duty by trammelling his judg-
ment in matters about which he should be left free to act as
the public interest alone may dictate or require. This is the
vitiating element and if the agreement has that tendency in
the eye of the law, it makes no difference what is the actual
motive in the particular instance or how pure it may be. In
the case of *W. S. E. Society v. Philadelphia,* 31 Pa. St., 175,
the rule was said to rest upon the ground that a corporation,
acting for the benefit of others, has no power to enter into a
contract which would prevent it from performing its public
duties and that this restriction upon the power of a corpora-
tion to make such contracts is nothing more or less than the
application of the familiar principle which avoids the con-
tracts of individuals when they are detrimental to the public's
rights. This identical question was fully considered by a
court of exceptional ability in *Gale v. The Village of Kala-
mazoo,* 23 Mich., 344, in which *Cooley, C. J.,* for the court,

said: "If a municipal corporation can preclude itself in this manner from establishing markets wherever they may be thought desirable, or from abolishing them when found undesirable, it must have the right also to agree that it will not open streets, or introduce water for the supply of its citizens, except from some specified source, or buy fire-engines of any other than some stipulated kind, or contract for any public work except with persons named; and if it might do these things, it is easy to perceive that it might not be long before the incorporation itself, instead of being a convenience to its citizens, would have been used in various ways to compel them to submit to innumerable inconveniences, and would itself constitute a public nuisance of the most serious and troublesome description. Individual citizens, looking only to the furtherance of their private interests, might in various directions, engage it in permanent contracts, which, while ostensibly for the public benefit, would impose obligations precluding further improvements and depriving the town prospectively of those advantages and conveniences which the municipality was created to supply, and without which it is worthless. For if the village might bind itself to one market house, for ten years, it might do so for all time to come; and if it might agree that improvements and conveniences of one class might be confined by contract to one quarter of the town, a reckless or improvident board might agree with a greedy or unscrupulous proprietor of town lots, that all improvements of every description should be so located or made as to conduce to his benefit, irrespective of the general good. It will not do to say of such a contract that it must be assumed to have been reasonable in view of the actual condition and wants of the village, and of its probable growth and future needs. Indeed it is impossible to predicate reasonableness of any contract by which the governing authority abdicates any of its legislative powers, and precludes itself from meeting in the proper way the emergencies that may arise."

The court concludes that the village had incurred no liability
to the plaintiff by its breach of the contract, as it was void,
being against public policy.  We have quoted liberally from
the opinion in that case, not only because the personnel of the
court entitles its judgments to the greatest respect, but be-
cause the proposition is stated in concrete form and sustained
by most cogent reasoning and apt illustration.  We do not
ignore the fact that there the contract involved the idea of
permanency in the location of the market house, but the court
attached no special importance to that feature, but decided
the case rather upon the ground that if the agreement was
held to be valid, the town commissioners would be deprived
of the exercise of that judgment and discretion in the prem-
ises so essential to the public welfare.  In our case the
promise that the buildings shall remain near the plaintiff's
property is, it seems to us, necessarily implied by the nature
of the contract, for it could be of little or no benefit to him
if they could be removed at any time, even if such a course
were practicable.  The principle of that case is applicable
here, and the closing words of the court, as quoted by us,
clearly so indicate.  The question is fully discussed in *Fuller
v. Dame,* 35 Mass. (18 Pick.), 472, in which *Chief Justice
Shaw,* with his accustomed learning and ability, presents
most satisfactory reasons and unanswerable arguments in
condemnation of such agreements and proves their invalidity
to a demonstration.  He argues that it is not a satisfactory
excuse to say that when the agreement was entered into, the
officers or trustees had come to the opinion that the location
in question was the best for the interests of the public, and
for the interests of the corporation.  Such an opinion might
be changed by new views and new offers.  Upon all these
questions the influence of the promise of separate and distinct
advantage, deprived the officers of the power of exercising a
free, disinterested and unbiased judgment.  Any influence
from any quarter, created by the promise of a sum of money,

to induce them so to contract, and to yield to particular terms, with a view to benefit separate and individual interests, operated as an injury to the public and rendered the contract void. The confidence of the people in the proper transaction of business by its officials could only be safely reposed under the belief that they will fairly exercise their best and unbiased judgment upon the question of fitness, without being influenced by extraneous considerations, having no connection whatever with the accommodation of the public. The conclusion is thus substantially stated: It is obvious that if one large landholder may make a valid, conditional promise to pay a large sum of money to a stockholder, or influential citizen, on condition that a work of great public improvement may be so fixed as to enhance-the value of his estate, all other landholders may make like promises on similar conditions, and public works, which should be conducted with a view to the public interest, and to the just rights of those who make advances for the public benefit, would be in danger of being overlooked, and sacrificed in a mercenary conflict of separate local and private interests. We regard the reasons advanced in that case as conclusive of the question and find that the courts and text writers have generally adopted the same views. "A contract will not be sustained which tends to restrain or control the unbiased judgment of public officers, it being contrary to public policy and void as abdicating a public function." Ingersoll on Pub. Corp., 310. The powers conferred upon officers of cities to be exercised for the public good in making improvements demanded by public convenience are continuing and inalienable. 2 Dillon Mun. Corp., (4 Ed.), section 685. "This power the city cannot refuse to exercise when public necessity or convenience demands that it shall be done, nor can it be allowed to excuse its failure in this particular upon the ground that it has by contract deprived itself of the right to act." *Louisville City Railway v. City of Louisville,* 71 Ky., 417; *Gas Co. v. Columbus,* 5

Ohio St., 65; *New Haven v. Railroad,* 62 Conn., 257; *Indianapolis v. Gas Co.,* 66 Ind., 404; *McKeesport v. Railway,* 2 Penn. Sup. Ct. Rep., 242; *Milhau v. Sharp,* 27 N. Y., 611; *Matthews v. Alexandria,* 68 Mo., 119. The court, in *Mayor v. Bowman,* 39 Miss., 682, said: "Even if we suppose the city to have legislative power and control over the liquor license, which it clearly has not, it was not competent for the board to bind the city by a contract taking away the legislative discretion; nor would the exercise of its legislative discretion in violating the terms of the contract subject the city to the payment of damages or a penalty. The authorities on this point are clear, but the reason of the thing is enough." The question has frequently arisen in the establishment of railroad depots. Railway companies are *quasi* public corporations and it has been said that the public have an interest in the location of their depots, the public convenience and accommodation being involved. "It is in recognition of the paramount duty of railway companies to establish and maintain their depots at such points and in such manner as to subserve the public necessities and convenience, that it has been held by all the courts, with very few exceptions, that contracts materially limiting their power to locate and relocate their depots are against public policy, and therefore void." *People v. Railway,* 130 Ill., 175. "It seems to be universally well settled that contracts undertaking to obligate a railroad company to establish its depot exclusively at a particular point, are void as against public policy." *Railroad v. State,* 31 Fla., 508. Cases and text books to the same effect can be cited numerously. We give only a few of them. *Railroad v. Ryan,* 11 Kan., 602; *Railroad v. Seely,* 45 Mo., 212; *Railroad v. People,* 132 Ill., 559; *Railroad v. Marshall,* 136 U. S., 393; *Railway v. Louisville, supra; Holladay v. Patterson,* 5 Oregon, 177; *Marsh v. Railroad,* 64 Ill., 414; Greenhood on Public Policy, 319; 2 Beach Mod. Law of Contracts, section 1517.

When a contract belongs to a class which is reprobated by public policy, it will be declared illegal though in that particular imstance no actual injury may have resulted to the public, as the test is the evil tendency of the contract and not its actual result. 15'A. & E. Enc. (2 Ed.), 934. We must not be understood as holding that in no conceivable case can a citizen contribute to the expense of erecting a public building. We can easily imagine circumstances where such contributions might be lawful, and proper to be considered in determining the best location for the public, but the donation of money must not be the inducement to the selection of a site apart from the public interests concerned. Cases which strongly approve the doctrine by which the particular contract in this case is condemned and in which the authorities are reviewed at length, are *Woodman v. Innes,* 27 Am. St. Rep., 274, and *Elkhart Co. Lodge v. Crary,* 49 Am. Rep., 746.

This court has recently had under consideration in *Glenn v. Commissioners;* 139 N. C., 412, a question very similar to the one now presented. The plaintiff in that case alleged that the defendants had contracted to maintain a public bridge over a river at a certain point on his lands for the considerations set forth, and that they were about to abandon the bridge and erect a new one at another place on the river not far away. He sought to enjoin the defendants from constructing the other bridge. This court held that the discretion of the commissioners could not be thus controlled or coerced. The reasons for this conclusion are fully stated by *Mr. Justice Connor* in the opinion of the court delivered by him. Citing *Bridge Co. v. Commissioners,* 81 N. C., 491, the court says: "The essential powers of government conferred for wise and useful purposes, should remain undiminished and unimpaired in the legislative body itself and pass in full force to its successors. When a contract undertakes to alienate any of these it is inoperative, and as no right

vests, so no obligation is created under it." The two cases are not distinguishable in principle. The court would be fully as reluctant to give the plaintiff relief in the case at bar as it was in the case cited, because here it is expressly alleged that the money was paid for the purpose of inducing the defendant to erect the buildings near the plaintiff's lands so that the latter would be enhanced in value. This was virtually inducing them to part with a discretion which should have been exercised in behalf of the public and not of the plaintiff.

This brings us to the consideration of the next question, whether the contract being void as founded upon an illegal consideration, the plaintiff can recover the money he has paid in part execution of the same. With reference to this subject certain rules may be taken as settled. The law gives no action to a party upon an illegal contract, either to enforce it directly or to recover back money paid on it after it has been executed. *Webb v. Fulchire,* 25 N. C., 485; *Warden v. Plummer,* 49 N. C., 524; 15 Am. & Eng. Enc. (2 Ed.), 997. The rule rests upon the broad ground that no court will allow itself to be used when its judgment will consummate an act forbidden by law. The maxim is *ex dolo malo* (or *ex turpi causa) non oritur actio,* and the kindred one is *in pari delicto potior est conditio defendentis.* In such cases the law leaves the parties where it finds them. When parties are *in pari delicto* in respect to an illegal contract, and one obtains advantage over the other, a court will not grant relief *(Wright v. Cain,* 93 N. C., 296), and when they have united in an unlawful transaction to injure another or others or the public, or to defeat the due administration of the law, or when the contract is against public policy, or *contra bonos mores,* the courts will not enforce it in favor of either party. *York v. Merritt,* 77 N. C., 213, *Ibid,* 80 N. C., 285; *King v. Winants,* 71 N. C., 469; *Pinckston v. Brown,* 56 N. C., 494; *Sparks v. Sparks,* 94 N. C., 532. *Chief Justice Smith*

said for the court in the last case: "But the principle is
that such an agreement will not be enforced at the instance
of either party, not that what may have been done in carry-
ing out its purpose will be undone by the court. It will not
assist when its aid is asked, or in other words, its provisions'
'will not be enforced in this court'—a court exercising
equitable functions. The rule that refuses to compel the
execution of such a contract, for similar reasons, refuses
to relieve from the consequences of what the parties have
done under it, in giving it full effect." The rule is departed
from when there is inequality of condition as between the
parties, or one of them has come under the subjection of the
other, or has been induced by oppression, imposition, undue
influence or improper means, to make the contract, in which
case he is not equally at fault with the other. While *in dé-
licto,* he is not *in pari delicto,* but stands, as it were, *in vin-
culis. Pinckston v. Brown, supra;* 15 Am. & Eng. Enc. (2
Ed.), 1004. When the contract is executory, the court will
not enforce it, and when executed, will not set it aside as
against one party at the instance of the other. We need not
decide nor inquire whether, when money is paid on an illegal
contract, the aid of the court can be successfully invoked for
its recovery, though the other party refuses to perform any
part of the agreement, so that it is wholly executory on his
side. There is conflict of authority upon this question.
*Ibid,* 1001; 1 Page on Contracts, section 526; Greenhood on
Public Policy, p. 80; *Spring Co. v. Knowlton,* 103 U. S.,
49; *Knowlton v. Spring Co.,* 57 N. Y., 518; *Kearley v.
Thompson,* L. R., 1 Q. B. Div., 742; *White v. Bank,* 22
Pick., 181; Wald's Pollock on Contracts (3 Am. Ed.), 502.
We have seen that he may recover where there has been any
unfair advantage taken or any imposition practiced. *Webb
v. Fulchire, supra.*

But it must not be supposed from what has been said, that
in order to deprive a party of the right to repudiate an illegal

contract and to recover money already paid thereon, it is necessary that the illegal transaction should have been fully executed, as it is quite sufficient for that purpose that there has been a partial fulfillment of the illegal undertaking by the party against whom the action is brought for the recovery of the amount so paid to him. 15 Am. & Eng. Enc. of Law (2 Ed.), 1007. We believe that the law writers and the courts are fairly well agreed upon that proposition. *Kearley v. Thompson,* L. R., 1 Q. B. Div., 742; *Knowlton v. Spring Co.,* 57 N. Y., 518; *Ullman v. Fair Asso.,* 167 Mo., 273; Wald's Pollock on Contracts (3 Am. Ed.), pp. 502, 507; *Hooker v. DePallos,* 28 Ohio St., 251. Especially should this be the law where the party who has thus partially performed the contract in return for the money received by him from the plaintiff cannot be put *in statu quo,* which is the case here. *Lord Justice Fry,* in *Kearley v. Thompson, supra,* for the court, said: "We hold, therefore, that where there has been a partial carrying into effect of an illegal purpose in a substantial manner, it is impossible, though there remains something not performed, that the money paid under the illegal contract can be recovered back." *Chief Justice Coleridge, Lords Esher, Bowen* and the other eminent judges who sat with them, fully concurred in this view. This has been generally accepted as the correct rule, even by the courts which hold that money paid on an illegal contract may be recovered back where the contract is wholly executory on the other side or as to the defendant. The principle should certainly apply to our case, in which it appears that the defendant has substantially performed the contract in part and cannot be restored to its original position and that the plaintiff has received a benefit which is not only substantial, but fully commensurate with the amount he has paid on the contract. While he loses the right to have the unexecuted portion of the contract performed, he does not by any means depart from the court

empty handed. Having received an equivalent for his money in the increased value of his property by the placing of the city hall where it is, he has no just ground to complain. We find no error in the conclusion and judgment of the court upon the verdict.