Civil action heard on demurrer to complaint.
The complaint, in substance, alleged that plaintiff had heretofore had a policy of life insurance in defendant company to the amount of $5,000, and had paid the annual premium thereon for four years, from 1903 to 1906, inclusive, at the sum of $131.50 per year; that the insurance policy was taken by reason of a contract entered into between plaintiff and defendant, separately drawn and evidenced, constituting plaintiff a member of the "board of advisory agents" of defendant company for the State of North Carolina, not to exceed three hundred in number and under the terms of which plaintiff, as such member, was to have a continuing share of the "renewal commissions upon all the business done by the company in said State, which share would increase from year to year, until at the end of five or six years the plaintiff's profits under said contract would fully pay the annual premiums upon said policy of insurance; so, that, by reason of the benefits to accrue to the plaintiff under said renewal commission contract, the plaintiff's said policy of insurance would, after the expiration of said five or six years, become self-sustaining"; that a scheme or plan was contained in the contract by which the interest of plaintiff in this renewal commission fund was to be declared and evidenced; and from time to time, in accordance with such plan, certain certificates were issued to plaintiff in evidence of his interest in said commission fund under the contract. These certificates were similar in form, one of them being, in words and figures, as follows:
 BANKERS LIFE INSURANCE COMPANY OF THE CITY OF NEW YORK.
This is to certify that John W. Smathers, a member of the company's advisory agents of the State of North Carolina, having caused the company to receive regular premiums on an additional amount of insurance in accordance with the provisions of this contract, shall be, at each distribution, entitled to six additional units of representation, provided that the conditions upon which said additional units were credited and the conditions of his said contract remain fulfilled.
New York, N. Y., 17 October, 1904.
FRANK G. COMBES, Secretary.
Form 736, 1 — Pa., S. N.C. 1 — 01 — 04.
This contract is set out in full as a part of the complaint, and (100) a portion of the same as indicative of its general plan and purpose s as follows:
"Whereas the Bankers Life Insurance Company of the City of New York has the good will and favorable influence of the leading bankers and *Page 98 
business men in and around said city; and whereas, to extend the benefits and advantages of the company and to further increase it business, it agrees to appoint throughout the State of North Carolina a board of advisory agents, to be composed of well-known citizens, agents of the company, whose good will and favorable influence shall be a considerable factor in sustaining the present high standing of the company.
"Now, therefore, in consideration of the foregoing and of the continued favorable influence, good will and assistance in building up the company of the holder of this certificate, the company agrees to the following articles:
"Article 1. To compensate the person herein named for his services, the company agrees to create from its expense appropriation a special renewal commission fund each year during a succeeding thirty years, based on the number of thousands of dollars of insurance which the company shall have in force in said State on December of each year, and which was issued during the ten years between 15 November, 1908, and 14 November, 1908, both inclusive, and upon which premiums payments have not ceased.
"Article II. The company agrees to appoint not to exceed three hundred members of said board; and in event of any such member forfeiting his membership therein, his place will not be filled, but the number of persons who shall thereafter be considered as members of said board shall thereby and to that extent be forever decreased.
"Article III. On 31 December, 1899, and annually thereafter during the period of thirty years mentioned above, the company shall determine the number of thousands of dollars of such insurance then in force, as provided in Article I; also the number of members then remaining in said board; and each member shall at all times be entitled to representation on said board in each distribution of funds in the proportion of twenty units to each ten thousand dollars of insurance (and proportionately for other amounts) upon which he has caused the company to receive the regular premiums and for which he holds a certificate."
As to obligations imposed upon plaintiff, the contract provides:
"Article V. This agents' renewal commission contract is issued and will remain in force upon the two following conditions, which are hereby agreed to by the holder hereof:
(101) "1. That the person herein named shall annually furnish to the company, upon its request, the names of ten people, residents of his county, whom he deems insurable.
"2. That it shall cause the company to receive annually the regular premiums on an amount of insurance aggregating at least five thousand dollars."
The complaint then alleged performance on part of plaintiff of all *Page 99 
obligations imposed upon him by the contract until prevented by breach thereof on part of defendant in 190__, when defendant company withdrew from the State and ceased to write insurance therein, and failed and refused to create from its expense appropriation the special renewal commission fund, as provided by Article I; and, further —
"8. That except for the representations and inducements held out to the plaintiff, as alleged in the third paragraph hereof, the plaintiff would not have taken out said insurance with the defendant; and the breach of said contract by the defendant, as hereinbefore alleged, made it necessary for the plaintiff to surrender and cancel said policy of insurance after he had paid four annual premiums upon said policy. The plaintiff's premium payments upon said policy were as follows: 20 June 1903, $131.50; 21 June, 1904, $131.50; 20 June, 1905, $131.50; 20 June, 1906, $131.50; and the plaintiff received from the defendant upon the surrender and cancellation of said policy the sum of one hundred and eight dollars ($108), or thereabouts.
"9. That by reason of the matters and things hereinbefore alleged, the plaintiff has been greatly endamaged, both generally and specifically, to wit, in the sum of two thousand dollars ($2,000), as nearly as plaintiff can ascertain the same.
"Wherefore, the plaintiff prays judgment against the defendant (1) for damages in the sum of two thousand dollars; (2) for costs, and (3) for such other, further and general relief as the plaintiff may be entitled to, upon the facts alleged."
Defendant demurred to the complaint on the ground that the alleged contract and agreement declared on were unlawful and void and contrary to the statutes of the State applicable to and controlling same. There was judgment overruling the demurrer, and defendant excepted and appealed.
After stating the case: The statute applicable to the question presented (Revisal, sec. 4775) provides as follows:
"4775. Discrimination between insurants forbidden. No life (102) insurance company doing business in this State shall make any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life in the amount of payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any of the terms and conditions of the contract it makes; nor shall any such company or any agent thereof make any contract of insurance or agreement *Page 100 
as to such contract other than as plainly expressed in the policy issued thereon; nor shall any such company or agent pay or allow as inducement to insurance any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever not specified in the policy contract of insurance."
In Annuity Co. v. Costner, 149 N.C. 293, the Court held that when a policy had been issued in connection with a contract of this character and retained by the beneficiary for a year, an action by the company on the notes executed for the annual premiums could be sustained, and this on the ground that, on the facts there appearing, the policy and the contract, which it was claimed conferred illegal benefits, were severable, and that defendant, having received the benefits of the policy as an executed consideration, could be made to pay the stipulated price.
In this case the policy has been surrendered and canceled and the surrender value received by the plaintiff, and the action is brought on the collateral agreement itself, seeking to recover damages for its breach, as of an executory contract; and we are clearly of opinion that, considered in reference to this claimant and persons in like relation and circumstance, the agreement in question is in direct contravention of the statute, and that no recovery upon it can be had. The express provision and obvious purpose and policy of the statute are to prevent discrimination among policy holders of like class and expectancy, and, in aid and furtherance of this desirable purpose, to secure publicity by requiring that all the stipulations of the contract and all agreements between the insurant and the company in reference thereto shall be plainly expressed in the policy; and, in our view, the contract in question here is violative of both these requirements. It creates a select body of its policy holders, not to exceed three hundred in number, and agrees to confer upon them a property right in a fund of the company, by means of which practically the annual premiums are to be reduced, and to such an extent that in five or six years, as the complaint states, the policy would be fully self-sustaining, thereby withdrawing a (103) portion of the company's assets for the benefit of this favored few, and tending to render it less able to furnish the general body of its policy holders with this desirable form of protection at the lowest cost consistent with good business prudence. It is an undoubted and distinct "special favor" and advantage to arise in behalf of this preferred class who are policy holders in the company for a given amount. For the other stipulation that the member shall send to the company annually, at its request, the names of ten people, residents of his county, whom he deems insurable, is so clearly colorable that it does not require serious consideration. Again, the agreement declared on is one *Page 101 
that, in this instance, was made in reference to plaintiff's contract of insurance. The plaintiff alleges that it was the sole inducement for taking out the policy, and, this being true, the law requires that it should appear in the policy itself and not otherwise. On both grounds, therefore, the contract or agreement declared on is forbidden by the statute, and recovery on it should not be allowed. Edwards v. Goldsboro, 141 N.C. 60;Warden v. Plummer, 49 N.C. 524; Sharp v. Farmer, 20 N.C. 122; 9 Cyc., 480, 481.
The same view as to similar statutes has prevailed in other jurisdictions. Ins. Co. v. Comrs., 125 Mich. 85; State Life v. Strong,127 Mich. 346; Cole v. State (Miss.), 45 Southern, p. 11. And the Attorneys-General of several States have officially advised against their validity.
We were referred by counsel to Urwan v. Ins. Co., 125 Wis. 349, in support of plaintiff's right to recover, but the authority does not sustain the position. In that case the plaintiff applied for a policy of insurance for five thousand dollars on the twenty-year payment plan and was to become a member of a board of special agents of the company, and paid $159.55 as a tentative premium on the policy for which he had applied. In an action brought to recover this premium plaintiff introduced evidence tending to show that the contract and policy sent plaintiff were entirely different from the agreement he had made, and that the agent of defendant had been guilty of false and fraudulent representations in inducing plaintiff to apply for the policy and pay the money; that plaintiff, on discovering the discrepancy, immediately offered to return both the contract and policy, etc. Recovery was sustained, and, in part, on the ground that, though the contract may have been forbidden by the statute, plaintiff, having repudiated same while the illegal portion was entirely executory, could recover the amount he had advanced.
To the extent stated, the position is recognized in Edwards v. (104)Goldsboro, supra, and not only finds support in the Wisconsin case cited, but in other decisions of authority (Spring Co. v.Knowlton, 103 U.S. 49; Stacy v. Foss, 19 Me. 335), and may be taken as established, at least where the parties are not in pari delicto or public policy does not forbid that recovery should be enforced. Webb v.Fulchire, 25 N.C. 485; Clark on Contracts, p. 338; 15 A. E. (2 Ed.), 1007. But in our case there has been no repudiation of the agreement nor any money withheld by defendant by reason of it, the premiums paid having been accounted for to plaintiff in the surrender value of the policy; and the action is in direct recognition of an illegal executory contract, and demands damages for its nonperformance.
Again, it is urged that the statute, as expressed, only forbids the *Page 102 
company and its agents from making the contract in question, and, having been passed for the protection of policy holders, an insurant seeking to recover on such a contract is not considered as in pari delicto, and for that reason should be allowed to recover. There are various recognized exceptions to the principle which finds expression in the maxim, in paridelicto, etc. They will be found very well digested in Clark on Contracts, p. 336 et seq., and well-considered decisions support and apply the principle and its modifications as there stated. Tate v. Building Assn.,97 Va. 74; Lawn v. Ins. Co., 131 Wis. 555. One of the exceptions referred to is to the effect that "parties are not to be regarded as being in paridelicto where the agreement is merely malum prohibitum, and the law which makes it illegal was intended for the protection of the party asking relief; and an instance not infrequent occurs in legislation on insurance where a statute forbids the issuance of a policy without a license, or establishes some other formal requirement, and the prohibitive features are addressed to the company or its agents, and the penalty, if any, only imposed upon them. In such case, if a company, without having taken out license, issues a policy, receives the premium, and a loss occurs, the statute will not prevent a recovery.
In the case suggested there is an executed consideration, and, the law having been passed for the general protection of policy holders, the exception is allowed to prevail. But no such position can obtain when the action is to enforce a contract entirely executory, and the same is directly forbidden by law, and a recovery would be subversive of the very public policy which the statute was designed and intended to uphold. True, the statute, in terms, is only addressed to the companies and their agents, and is enacted for the protection of policy holders; but this is for the general body of policy holders who would (105) suffer by the enforcement of such agreements, and not for those who have entered into the forbidden agreement and are seeking to profit by its terms. In such case the litigants are in pari delicto, and any and all recovery is denied. Edwards v. Goldsboro, supra; Yorkv. Merritt, 77 N.C. 214; King v. Winants, 71 N.C. 469; Pres.Ministers' Fund v. Thomas, 126 Wis. 281.
The contract declared on comes directly under condemnation of the principles expressed and sustained in these decisions, and the judgment overruling defendant's demurrer must be reversed.
Reversed.
Cited: Lloyd v. R. R., post, 540, 541; Sykes v. Thompson, 160 N.C. 351;Slehli v. Express Co., ibid., 506; Parrott v. R. R., 165 N.C. 309. *Page 103