J. R. SYKES v. WILL ED. THOMPSON.

(Filed 20 November, 1912.)

1. Contracts—Illegal Consideration—In Pari Delicto.

The principle that the courts will not lend their aid to the enforcement of illegal agreements, or entertain an action to recover money paid on property transferred thereunder, is not applicable when the party seeking the relief is not *in pari delicto*, as where he has been induced to enter into the agreement by fraud and undue influence of the other party.

2. Same—Pleadings—Compounding a Felony—Demurrer.

The plaintiff alleges that the defendant had been the prosecuting witness in a criminal action against his sons, charged with obtaining from the defendant a certain sum of money under false pretenses; that the sons were then absent from home, and the plaintiff, to stop the prosecution, paid the money to the defendant, under his false and fraudulent representations that the charges in the indictment were true; that the plaintiff was totally unaware of the matters stated in the indictment, and afterwards found them to be false. *Quære*, as to whether the complaint, in this case, sets forth, as a basis of plaintiff's cause

of action, an illegal agreement to suppress a criminal prosecution with sufficient definiteness; but if it does, it is *Held*, that the plaintiff and defendant were not *in pari delicto,* and a demurrer was bad.

APPEAL by plaintiff from *Carter, J.,* at October Term, 1912, of ORANGE.

Civil action, heard on demurrer to complaint. The court, being of opinion that plaintiff's cause of action was founded on an illegal transaction, gave judgment sustaining demurrer, and plaintiff excepted and appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Hoke.*

*W. H. Carroll for plaintiff.*
*S. M. Gattis and Bryant & Brogden for defendant.*

HOKE, J. The complaint alleged that, on 22 April, 1911, defendant sued out a criminal warrant against A. J. and L. A. Sykes, sons of the plaintiff, charging them with having obtained goods of defendant by false pretenses, and made further statement of plaintiff's cause of action as follows:

"3. That at the time of the issuance of the said warrant, A. J. Sykes and L. A. Sykes had left Orange County to seek employment with a telephone company, who was operating in Wake County, to put up some poles and wires for them, and knew nothing whatsoever of the issuance of said warrant or the charge made therein at the time of their departure from home, and they were expecting to return as soon as they completed their work, if they should be able to get employment as aforesaid. Nor did the plaintiff in this case know at the time his sons left home that the defendant had made any charge whatsoever against them concerning the transaction herein set forth, or any other matter whatsoever.

"4. That the defendant, after procuring the said warrant from the justice of the peace aforesaid, placed the same in the hands of a deputy sheriff of Orange County, George Whitted, and ordered him to go to the house of plaintiff and arrest his said sons; that the said deputy sheriff thereupon came to the house of plaintiff for the purpose of arresting his said sons, but did

not find them; that the plaintiff then made inquiry, and found out that the said warrant had been issued against his sons by the said W. E. Thompson as aforesaid, and thereupon went to see said Thompson about the matter and to find out what the charges were against his sons; that the said Thompson then related to him that his sons had gotten a receipt for $340 from him at Efland for some sills, and after getting the receipt had refused to pay him the said $340 or any part thereof. That during the different conversations had with the said Thompson on the same day, said Thompson by representations through himself and his attorney made this plaintiff believe that his sons had committed the offense set forth in the warrant aforesaid, and told this plaintiff that the boys could not come home, or, if they did, they would be arrested under this warrant and sent to the penitentiary, and that the best thing that plaintiff could do was to pay the $340 back to him for them; that the plaintiff, believing what the said Thompson and his attorney said was true, and fearing that his boys would not be able to return home, or, if they did, they would be sent to the penitentiary, told the said Thompson that he did not have the money in cash, but that he would make a mortgage to him in lieu of the money if this would be satisfactory; that the said Thompson then demanded of the plaintiff that he execute and deliver to him a note and mortgage payable in ninety days on his real estate for the sum of $360; that by such conduct and representations the plaintiff was made to have a note and mortgage for $360 drawn up, but the plaintiff, finding a friend who would let him have the money in lieu thereof, paid to the said Thompson the sum of $340 in cash.

"5. That after the plaintiff had paid to the said Thompson the said sum of $340 in cash as aforesaid, he found out that the said charges against his sons were absolutely false, and he now charges herein the said Thompson induced him to pay the said sum of $340 in money by false pretenses and false representations and threats against his sons as aforesaid."

In Clark on Contracts (2 Ed.), p. 336, the author says: "It is a well-settled rule that in no case will the court lend its aid to the enforcement of illegal agreements. Further than this,

if the agreement has been executed, in whole or in part, by the payment of money or transfer of property, the court will not, as a rule, entertain an action to recover it back."

This general principle has been applied in several recent decisions of the Court, as in *Smathers v. Insurance Co.,* 151 N. C., 98; *Edwards v. Goldsboro,* 141 N. C., 60, and these and other cases here and elsewhere recognize that the rule as stated, or the second portion of it, is subject to well-recognized exceptions; one of them being when parties are not *in pari delicto.* In such case, if the facts otherwise justify it, a recovery may be sustained by the more innocent party, notwithstanding the illegal features of the agreement, and this qualification of the more general principle is usually allowed to prevail when the "party seeking relief has been induced to enter into the agreement by fraud or undue influence." *Wright v. Cain,* 93 N. C., 296; *Pinckston v. Brown,* 56 N. C., 494; *Webb v. Fulchire,* 25 N. C., 485; *Hobbs v. Boatwright,* 195 Mo., 693; *Gorringe v. Reed,* 23 Utah, 120; *Austin v. Winston,* 11 Va., 33, 3 Amer. Decisions, 583; Clark on Contracts, p. 336; 15 A. and E., 1000, 1007, etc.

The general doctrine, with the modifications applicable to the facts presented, is very well expressed in the headnotes to the Missouri case, *supra,* as given in 113 Amer. St. Rep., p. 709, as follows: "The doctrine that the courts will not aid a plaintiff who is *in pari materia* with the defendant is not a rule of universal application. It is based on the principle that to give plaintiff relief in such a case would contravene public morals and impair the good of society. Therefore the rule should not be applied in a case in which to withhold the relief would to a greater extent offend public morals. The question of what is public policy in a given case is as broad as the question of what is fraud in a given case, and is addressed to the good common sense of the court. There may be such an inequality of conditions between persons *in pari delicto* that relief may be given to the more innocent, if there are collateral and incidental circumstances attending the transaction and affecting the relations of the parties which render one of them comparatively free from fault, or where the courts intervene from motives of public policy."

Recurring to the complaint, there is doubt if it sets forth, as the basis of plaintiff's cause of action, an illegal agreement to suppress a criminal prosecution with sufficient definiteness to affect the same as a matter of law; but assuming it to be otherwise, we are of opinion that plaintiff's claim, on the facts as they now appear, comes well within the principle just stated and that the judgment sustaining defendant's demurrer is erroneous. Let this be certified, that such judgment be set aside and defendant be allowed to answer.

Reversed.