STATE LIFE INSURANCE CO. v. STRONG.

LIFE INSURANCE—DISCRIMINATION—ACTION FOR PREMIUM.

2 Comp. Laws, § 7219, prohibiting life-insurance companies from discriminating between insurants of the same class as to rates, dividends, or benefits, or from giving or allowing any valuable consideration, not specified in the policy, as an inducement to insurance, is violated where, by a special contract delivered contemporaneously with a policy, the insured is constituted one of not more than 500 "advisory representatives" of the company, and as such is to receive certain financial benefits, dependent on the amount of insurance in force; and hence an action cannot be maintained by the company on a note given for the premium on such policy.

Error to Grand Traverse; Mayne, J.  Submitted April 19, 1901.  Decided July 2, 1901.

*Assumpsit* by the State Life Insurance Company of Indianapolis, Indiana, against Nathaniel E. Strong, on certain promissory notes.  From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*George H. Cross*, for appellant.

*John A. Loranger* (*Parm. C. Gilbert*, of counsel), for appellee.

Hooker, J.  The plaintiff is a foreign insurance company.  It brought this action upon two premium notes given by one of its policy holders in Michigan.  The evidence disclosed that one of the plaintiff's agents approached the defendant, and sought to induce him to take a policy from the plaintiff, on October 1, 1898, and that defendant upon that day made application for a $5,000 policy, and for appointment as the advisory representative of the company.  On October 4th the company issued its policy, and on or about October 9th it issued its advisory representative contract, so called.  The applications were signed by the defendant, and at the same time defendant signed the two notes sued upon.  The defendant testified:

"Am acquainted with W. S. Shelton.  About the 1st of October, 1898, he called at my store, and said to me, 'I want to talk to you a little about life insurance.' I said, 'I have all the insurance I want.'  'Well,' he said, 'I have something here that will interest you.'  'Well,' he said, 'I represent an old-line life-insurance company. Here are rates I can give you.  I can give you a policy that will cost you the first year about $91, and the second year $85, and the third year about $75, decreasing every year until the expiration of the seventh year.  You will then receive an annuity of so much each year till the close of the term, which will be 20 years.'  In other words, I would receive a policy of insurance as protection on my life for a term of 20 years, and receive as a benefit

an annuity of so many dollars every year after the seven years. I says: 'That astounds me. I don't see how you can do that. If your company is all right, it is good enough for me. Is it an old-line company?' 'Yes, sir,' he said, 'it is an old-line company.' 'I know but little of your company,' I said. He said, 'We are giving 500 special contracts throughout the State of Michigan, and this is open for you, if you want it.' 'Well,' I said, 'if your company is all right, I want it. It is good enough insurance for me.' And we closed the deal with that understanding. But I said to Mr. Shelton — He offered to take these notes that Mr. Cross has mentioned here; so I said to him, 'What evidence have I that you would not take these notes over to the bank, and sell them? Then I would have to pay them.' 'Why,' he says, 'I will make an assignment of these notes right here in your presence, and if later you find that this company is not an old-line company, exactly as I have told you'—

"*Mr. Cross:* Wait. We object, on the ground that they are seeking to introduce oral evidence to vary the terms of a written contract and agreement. The notes, when they were executed and delivered, became a written contract, and the terms or legal effect of those notes cannot be varied by any conditions attached to them at the time of delivery.

"*The Court:* The testimony, for the present, will be admitted, with the understanding that Mr. Cross will be permitted to present his authorities and raise the same objection before the case goes to the jury.

"*Mr. Cross:* Note an exception.

"(Witness resumes his answer as follows:) He said to me like this: 'Now, Mr. Strong, if you find later, on investigation, that this is not an old-line company, you may return the policy, and the notes will be canceled and returned to you; and, to prevent my selling the notes, I will make an assignment of them to the company here in your presence.' And on that express arrangement made there I signed the notes. The policy came, and later on I found that it was issued by an assessment company, and not an old-line company; so about February 2, 1899, I wrote the company a letter, inclosing the policy to them, and asked the company to return my notes; that the company was an assessment company; that the policy was assessment insurance; it wasn't what I had bought, and I didn't want it. I relied upon the statements made at the time I signed the application and notes."

He received the policy and the contract together from the company.   This testimony was undisputed.

The court charged the jury as follows:

"Gentlemen of the jury, this is an action brought by the State Life Insurance Company of Indianapolis, Indiana, plaintiff, against Nathaniel E. Strong, of Traverse City, Michigan, defendant, to recover a sum of money represented by two promissory notes aggregating $91.55.   These notes were given in payment for the first annual premium upon a policy of insurance issued to defendant by plaintiff. This policy bears date the 4th day of October, 1898.   The application on which it was issued bears date the 1st day of October, 1898.   At the time of taking the application for insurance, plaintiff also, through its agent, received from the defendant an application for appointment as a member of an advisory board.   This application, together with the application for insurance, was sent to the home office of the company by the agent, and in due time a policy of insurance was issued, and delivered to the defendant, together with a contract designated 'Advisory Representative's Special Contract of the State Life Insurance Company of Indianapolis, Indiana, Limited to Five Hundred,' based upon the two applications aforesaid.   Under the terms of this latter contract, Nathaniel E. Strong agreed to aid the State Life Insurance Company in increasing and extending its business in his locality by recommending said company to suitable persons for insurance, and also persons desirable as agents, and said State Life Insurance Company appointed said Nathaniel E. Strong an advisory representative, and agreed as follows:

"ARTICLE 1. The number of such advisory representatives shall not exceed 500.

"ART. 2. That, on January 1st of each year during the continuance of the contract (which was to remain in force and effect as long as the party maintained his policy of insurance at $5,000), the company should compute the number of thousand dollars of insurance in force written during 10 years from and after January 1, 1898, in the United States, except the State of Indiana, upon which there had been paid during the preceding year one full annual premium, two semi-annual, or four quarter-annual premiums.

"ART. 3. The said company agrees upon the date aforesaid to credit said advisory representative with such a sum of money from the expense fund of the company as shall be obtained by dividing an amount of money equal to 25 cents for each $1,000 of insurance

in force as above by the number of said advisory representative contracts remaining in force. The amount so credited to said advisory representative shall each year, on the anniversary of the date of the contract, be paid to him by said State Life Insurance Company, subject to agreement of said advisory representative; said payment being his compensation for his services as said advisory representative, and for no other consideration.

"The laws of the State of Michigan provide:

" 'No life-insurance company doing business in this State, nor any officer or agent of such company, shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life, either in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any such company, or any agent thereof, make any contract of insurance, or agreement, promise, or representation as to such contract, other than as plainly expressed in the policy issued thereon; nor shall any such company or agent pay or allow, or offer to pay or allow, as inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or give or make any valuable consideration or inducement whatever, not specified in the policy contract of insurance.' 2 Comp. Laws, § 7219.

" Under this contract of insurance, it is not certain whether one of the 500 advisory representatives, provided the class should be filled, would pay the same annual premium as others not of this class, but of the same age and expectancy, and otherwise entitled to receive the same rates. The premium paid by each person of the same age and expectancy was placed in certain funds designated in the policy of insurance, and from one of these funds this 25 cents per $1,000 provided in this special contract was paid to members of the advisory board. The special contract recites that payment is made as compensation for services; yet it is not a commission; neither is the party in any way obligated to furnish one agent or applicant for insurance. The services to be performed, if any, are very indefinite. The sum to be paid is not in reality a compensation for services to be rendered. By this special contract it was intended to form a class limited to 500 members, who should receive advantages over others who did not belong to this class. The object of the law is apparent. Under the advisory representative's special contract, it is

within the power of the insurance company to fix the rate per thousand at such a sum as would materially lessen, if not entirely pay, the premium of insurance, and thereby vary the cost of insurance between insurants entitled to receive the same rate. Not being included in the policy, individuals could not inform themselves as to the rates charged others; and the business could not be so readily investigated and regulated by the department of insurance. If permitted, it would be within the power of any insurance company so desiring to nullify the provisions of this statute. The entire transaction forms the consideration of these promissory notes, and, being in violation of the provisions of the statute, the plaintiff cannot recover in this action, and your verdict must be, 'No cause of action.'"

Counsel for the plaintiff contends that this was erroneous, and supports his contention by the claim that the contract of insurance was separate and distinct from the advisory representative contract. We are of the opinion that they were both a part of one transaction, as found by the circuit judge, and within the prohibition of the statute quoted by him.

The judgment is affirmed.

The other Justices concurred.