McNAUGHTON, Appellant, vs. DES MOINES LIFE INSURANCE COMPANY, Respondent.

*September 14—October 5, 1909.*

*Life insurance: Agency contract with insured: Credits thereunder, how applied on premiums: Estoppel: Forfeiture: Waiver: Unlawful rebate of premiums through agency contract: Evidence: Effect on policy: Lapse: Reinstatement.*

1. A life insurance company having given a person with his policy an agency agreement, stipulating to pay him annually a *pro rata* part of a specified percentage of all premiums paid for the ensuing ten years on business written in specified territory, such payment to be made within thirty days after the anni-

versary date of the agreement, coinciding with the last day for paying annually a policy premium with a specified penalty to prevent lapsing, and the premiums having been made payable annually with an option to pay quarterly, and the assured having been duly specifically notified of the due date and amount of the second policy premium, the first apportionment under the contract being applied thereon, and he having paid accordingly, and due notice according to custom having been given as to the third premium and second agency apportionment and payment made of the quarterly amount, less such apportionment, and the company, while retaining the money, having claimed that only one quarter of the agency apportionment was applicable on a quarterly premium payment, and demanded payment of an additional amount equal to three fourths of the agency apportionment within the thirty days for payment with the added penalty, which demand was not complied with, and thereupon the company having invited the assured to apply for reinstatement under the agreement in the policy in that regard, representing that, by the contract, he was entitled to credit of only one quarter of such apportionment on a quarterly premium, and application having been made accordingly and allowed, the additional payment being the same as the unpaid agency amount due and payable as aforesaid:

(a) The giving of the premium notice in the second instance, as in the first, estopped the company from claiming that the entire agency apportionment was not applicable upon the amount payable on the policy within the time stipulated for payment of such apportionment.

(b) The premium notice showing application of the agency apportionment in the second as in the first instance, constituted an actual payment of the agency apportionment fully executing the rebating contract, if such there were, for the quarter the policy premium was payable.

(c) The notice to the assured after payment of the amount, unsatisfactory to the company, demanding only an additional amount equal to three fourths of the agency apportionment, waived the penalty for not making payment on the exact due date of the premium if a penalty were thereby incurred.

(d) There having been due and payable to the assured on the contract by the day limited for paying the policy premium, an amount equal to the balance claimed by the company on the policy, it was bound to apply the credit if necessary to prevent a lapsing, and the application should be treated as having been in effect made by operation of law.

(e) The assured having acted on the false representations

of the company in submitting to its claim that the policy had lapsed was not affected by the law of surrender of rights by acquiescence.

2. If an insurance company makes, ostensibly, an agency contract with a policy-holder at the date of his policy, all as one transaction, for the purpose, in fact, of rebating the cost of the insurance, stipulated in the policy, such contract is unenforceable.

3. The circumstance of a life insurance company contemporaneously making an insurance agency contract with, and issuing to a person a life policy, the contract stipulating for payment to the assured for services, not definitely mentioned except by reference to an application for such contract, not produced, of a percentage each year of the premiums received in such year for insurance written in specified territory, is not of itself sufficient to show with reasonable certainty that the purpose of the contract is to circumvent the statutory prohibition against rebating policy premiums.

4. Where mere circumstances are reasonably consistent with a theory of violation of a penal statute and also inconsistent therewith, the latter should prevail in the absence of corroborating evidence.

5. An executed agreement for rebating a policy premium contrary to the statute on the subject renders the rebater liable to the statutory penalty but does not render the policy void or voidable.

6. If money is absolutely due and payable from an insurance company to a policy-holder before the due date of his premium the company should apply the credit if necessary to save the policy, and in judicial proceedings involving the matter such application should be conclusively presumed to have been made, especially if such had been the custom of the company as to the particular policy.

7. If a person, erroneously supposing his policy to have lapsed, his view in that regard being induced in whole or in part by a false position on the part of the insurer, applies successfully for reinstatement under the clause of the policy permitting it, he is not precluded thereby from thereafter insisting that the policy did not in fact lapse.

8. If a person with knowledge, actual or constructive, so acts in regard to contractual relations that the reasonable inference under all the circumstances is that he has abandoned a claim of right, and the adverse party in such relations acts on the faith of such inference, as a general rule an effectual intent to waive is implied though there is no such intent in fact, and

even if there be an undisclosed intent to the contrary, and regardless of any element of estoppel strictly speaking.

9. In case of an insurance company seeking to reap advantage from its own turpitude as to violating the law against rebating, for the purpose of avoiding a policy agreement, the burden is upon it to establish the facts in that regard to a reasonable certainty.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Trempealeau county: J. J. FRUIT, Circuit Judge. *Reversed.*

Action by a beneficiary to recover on an insurance policy. The policy was issued by defendant, an Iowa corporation, June 15, 1903, at Whitehall, Trempealeau county, Wisconsin. It required payment of a premium of $156.10 at the issuance of the policy and the same annually thereafter, or a specified amount semi-annually or quarterly, the latter rate being $41.35 per quarter. It provided in case of default for an extension of thirty days with the privilege of making payment by adding ten cents per thousand dollars of the insurance, otherwise for a lapse subject to reinstatement of the policy upon the assured furnishing a satisfactory certificate of good health signed by the assured and a reputable physician on a form furnished for that purpose and approval by certain specified officers; also that the policy should be incontestable after two years in case of all premiums up to that time having been duly paid; further, in case of the policy having lapsed after full payment of premiums for three years, that the assured should have certain specified rights. The incontestable clause was satisfied. The policy was issued pursuant to an application stipulating that all statements contained therein should be regarded as material to the risk and warranties.

Accompanying the policy there was a special agency contract, entitling the assured, so long as the contract was kept in force, to a *pro rata* proportion annually for a period of twenty years of seven per cent. of all premiums paid for the

ensuing ten years on business written in this state, the same to be taken from the expense element of such premiums and apportioned annually within sixty days after the 1st day of January in each year, and paid within thirty days after the anniversary date of the contract. February 17, 1904, defendant gave the assured notice of an apportionment in his favor of $13.23. Seasonably it gave him the usual premium notice of the due date of the annual premium for 1904, deducting the $13.23, though it was not payable till July 15th thereafter. He sent the balance pursuant to the notice. It was accepted. Seasonably for 1905 defendant gave the assured written notice of an apportionment in his favor under the agency contract of $14.60, payable July 15, 1905. Notice of the next annual premium was given, crediting thereon the $14.60, in harmony with the transaction of the previous year. The assured elected, as he had a right to do, to pay June 15, 1905, a quarterly premium. For that he remitted the proper amount less the apportionment of $14.60. He was thereupon notified, he could not be permitted, in such a case, to deduct more than a quarter of such apportionment and to remit $10.95 to make up full quarterly payment. He failed to do so or claim any right under the thirty-day extension element of the policy, and was thereupon notified that it had lapsed, leaving him the privilege of reinstatement as provided therein, and sent him, at the same time, a form for the requisite health certificate. He furnished the certificate properly executed. He stated therein that he was of sound constitution, in good health, and that since the date of the original application he had not been afflicted with any sickness or disease whatever, nor consulted or been attended by any physician, and warranted such statements to be true, agreeing that otherwise the insurance should be void. Attached thereto was a physician's certificate of good health and risk. Due payment of the requisite amount was made, the application for reinstatement approved, and a certificate ac-

cordingly issued July 28, 1905, providing that its validity should depend upon the warranties contained in the application therefor being true, and the assured being in good health and of temperate habits on the date of the reinstatement. He died February 10, 1906.

Conditions precedent to the commencement of the action were satisfied. The pleadings put in issue the question of whether the policy lapsed for nonpayment of the premium of June 15, 1905, whether the declarations in the application for reinstatement that the assured, at the date thereof, was in good health, and that since the date of the original application he had not been afflicted with any disease or sickness whatever, nor consulted or been attended by any physician, were true, and pleaded that immediately upon discovering such declarations to be untrue it disclaimed any intention to appropriate the money paid for the reinstatement and that it was, thereafter, at all times in readiness to return the same to the person, or persons, entitled thereto.

The cause was submitted to the jury on the evidence in respect to the issues raised as aforesaid, resulting in a special verdict, as follows:

"(1) Was said A. J. McNaughton of sound constitution on the 25th day of July, 1905, when he signed the certificate of reinstatement? *A.* Yes.

"(2) Was said A. J. McNaughton in good health on the 25th day of July, 1905, when he signed the certificate for reinstatement? *A.* Yes.

"(3) Had said A. J. McNaughton been afflicted with any disease or sickness whatever between the date of his application for the policy of insurance in question and the date when he signed the certificate for reinstatement of lapsed policy on the 25th day of July, 1905.? *A.* No.

"(4) Had said A. J. McNaughton consulted or been attended by any physician at any time between the 15th day of June, 1903, and the 25th day of July, 1905? *A.* No."

The court, on motion, changed the answer to the fourth question from "No" to "Yes," refused to change the answer

to either the first, second, or third question, and rendered judgment dismissing the action with costs. The plaintiff appealed.

For the appellant there was a brief by *Anderson & Ekern,* and oral argument by *H. L. Ekern.*

For the respondent there was a brief by *R. S. Cowie* and *Edward Lees,* and oral argument by *Mr. Lees.*

MARSHALL, J.   Respondent's counsel make the point that the contract which accompanied the policy was an evasion of the anti-rebate law, rendering the credit which assured applied on his quarterly payment ineffectual, thus leaving him in default and causing a lapse of the policy.   The trial court does not appear to have passed on that question, but if counsel be right, the fact, in one aspect of the case, must render the judgment right even if the court below was wrong as to the particular matters complained of by appellant.

It was held in *Urwan v. N. W. Nat. L. Ins. Co.* 125 Wis. 349, 103 N. W. 1102, that a transaction, somewhat similar to that which occurred in this case, pursuant to an agreement on the part of the insurance company indicating that the ostensible purpose was not the real one, but was to rebate the regular cost of the insurance as an inducement to taking out the same, was unenforceable. It must be noted that there was proof in that instance, indicating the intention of the parties, other than the mere production of an agency contract, as in this case referring to an application not offered in evidence that might explain the transaction.   There is no connection here, on the face of the papers, between the agency contract and the policy, except the mere fact that the two writings were made at the same time.   In the *Urwan Case* the payments agreed to be made to the so-called agent were fixed in amount and the policy premiums were to be likewise, as the company represented.   That was quite significant as showing that the real purpose was to rebate the latter

without any equivalent consideration. There were other circumstances in proof showing conclusively that such was the mutual intention. In this case there was an entire absence of such proof, while the agency contract provided for compensation contingent upon the business written in this state, and the consideration to be rendered therefor may well be presumed to have been specified in the application referred to in the writing, which, as before indicated, was not produced in evidence. Under the circumstances there is room only for suspicion that the purpose of the transaction was to evade the anti-rebate law. Contractual transactions are not to be avoided in favor of one of the parties who seeks to escape his obligations, on mere suspicion. The court will not presume from circumstances which are consistent or inconsistent, according to the viewpoint from which they are measured, with violation of a penal statute, that such violation occurred in the particular case, without sufficient corroborating evidence to establish it to a reasonable certainty. While courts should firmly enforce the policy of the law against rebating they should not go so far as to cast the burden of proof upon a policy-holder to show that there was no such violation, upon the company involved seeking to escape its obligation on the theory that it is a lawbreaker.

There is a further reason why respondent cannot invoke the anti-rebate law to defeat the policy claim in this case. In *Laun v. Pac. Mut. L. Ins. Co.* 131 Wis. 555, 111 N. W. 660, it was held that an executed agreement for rebate of a policy premium, while constituting ground for punishing the rebater as the statute provides, does not render the policy void;—that the latter purpose was not within the fair meaning of the statute; and that the rule of *Urwan v. N. W. Nat. L. Ins. Co., supra,* goes no further, as to the rights of a policy-holder, than to render executory agreements for the rebating of premiums not specified in the policy unenforceable. As we view this case, if the purpose of the agency agreement.

was to rebate the premiums specified on the face of the policy, it was fully executed as to the premium in question and until the policy matured.

As indicated in the statement, before the first premium became payable after the assured received his first credit upon the agency contract, he was duly notified thereof, and of such credit. As between the parties, on the face of the record, when that premium fell due June 15, 1904, respondent owed the assured $13.23 as a credit on such contract, payable July 15th thereafter, or within the time such premium was payable by addition of the trifling sum of fifty cents as a penalty for not making payment at the precise due date. Previous to such date, as appears, respondent notified the assured of how it proposed to treat the agency credit by sending him a notice of the premium, applying thereon such credit. From that circumstance the assured had a right to assume that such credits in the future would be likewise treated. The respondent was precluded by the plainest principles of estoppel from claiming to the contrary to the prejudice of the assured, as to any subsequent payment, made before it gave the assured notice of a change of its position.

When the next annual payment came due, subject to the right of making quarterly payments, respondent gave the assured the usual premium notice, applying the agency credit as before. Then for the first time, and after the quarterly payment was made with the credit and cash, and after the time for payment without incurring the aforesaid penalty of fifty cents, the assured was notified that:

"In cases where the premiums are paid quarterly, one fourth of the apportionment is credited upon each quarterly payment. Therefore, it will be necessary for you to send us $10.95 additional in order to receive full credit for the current quarterly under the policy referred to."

That was an entire change of front, as the assured had a right to view the matter.

There was nothing in the writing indicating how the agency credit should be applied or that the same should be applied at all. The communication quoted involved a suggestion that the company asserted a right to hold the balance of the agency credit and apply the same in $3.65 credit instalments on quarterly policy premiums as they fell due during the year, while the agreement was for payment of the entire amount by July 15, 1905. The assured had a right to assume that the mere use of the $14.60 for the thirty days, amounting to about seven cents, was not considered by respondent of any consequence and that it would waive the precise due date of the credit as before. Moreover, in calling for the additional payment of $10.95 after the penalty was incurred, such penalty was waived. So on July 15th thereafter, by respondent's conduct, it was permissible for the assured to pay the additional $10.95, the precise amount then due of the agency credit in any view of the case, and save a forfeiture, and he may well have assumed it would be then used to save the policy from lapsing according to the well-established rule that it is the duty of an insurance company to apply dues from it to an assured, presently payable, upon his premium likewise payable, if necessary to prevent a forfeiture, especially where, from previous transactions between the parties, the assured has a right to rely upon such application being made.

The contention of appellant's counsel on the point last discussed we regard as sound and abundantly supported in principle by authorities cited to our attention and many others. *Hull v. N. W. Mut. L. Ins. Co.* 39 Wis. 397; *Matlack v. Bank,* 180 Pa. St. 360, 386, 36 Atl. 1082; *Van Norman v. N. W. Mut. L. Ins. Co.* 51 Minn. 57, 52 N. W. 988; *Girard L. Ins., A. & T. Co. v. Mut. L. Ins. Co.* 97 Pa. St. 15; *Chicago L. Ins. Co. v. Warner,* 80 Ill. 410; *Ins. Co. v. Dutcher,* 95 U. S. 269, 272; *Northwestern Mut. L. Ins. Co. v. Ross,* 63 Ga. 199; *Northwestern Mut. L. Ins. Co. v. Fort's Adm'r,*

82 Ky. 269; *Franklin L. Ins. Co. v. Wallace,* 93 Ind. 7; *Northwestern Mut. L. Ins. Co. v. Little,* 56 Ind. 504.

It would be useless to argue that application of the agency credit was not in fact made, therefore the agreement to pay the same was executory and within the condemnation of the *Laun Case* because, primarily, as we have seen, it was not established that the agency agreement was a rebating contract; secondarily, because the application was in fact made, as the assured had a right to assume when the premium notice was sent; and, thirdly, since in any event it was the duty of the respondent to make the application on or before July 15, 1905, the assured had a right to assume that such application would be made if necessary to save his policy, and the court in such a case must treat that which ought to have been done as having been done.

But it is insisted, on respondent's part, that, by the assured applying for reinstatement of the policy, treating the same as having lapsed, and being reinstated accordingly, there was conclusive acquiescence in the claim of respondent in that regard. On that *Teeter v. United L. Ins. Asso.* 159 N. Y. 411, 416, 54 N. E. 72, is relied on. It is the opinion of the court that the rule there adopted is somewhat harsh and carries the doctrine of loss of rights by mere waiver rather to the limit, if not beyond, its boundaries as laid down by this court in *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563.

There can be no waiver without at least implied intent to waive based on knowledge, actual or constructive, of the facts. Where the reasonable inference from the whole situation between parties in contractual relations, is that one of them with knowledge, actual or constructive, has waived or abandoned a claim of right, and the other, relying thereon, has acted accordingly, generally speaking, an effectual intent to waive is implied "regardless of whether there was an actual or expressed intent to waive, or even if there was an actual but undisclosed intention to the contrary," whether there is

any element of estoppel, strictly so called, or not.   Such is the doctrine of mere waiver as approved in the *Pabst B. Co. Case.*   Whenever a case falls clearly within that principle it must be held to be governed thereby.   Those arising under insurance contracts cannot be excepted, neither can an exception be made because, merely, of apparent hardship in the particular instance.   Departure from that would turn judicial administration into the uncertain field of mere arbitration.

It may be that *Teeter v. United L. Ins. Asso., supra,* is within the principle of waiver above indicated.   Certain it is that the learned court in pronouncing judgment thought so.   The opinion of the court here is that the case goes a little too far and yet has some distinguishing characteristics from the one in hand, tending to locate the latter outside the principle under discussion if the former is within it.   In the one there was good ground on the company's part for claiming a forfeiture, as the assured must have known, while here the assured had no good reason to think respondent's position was tenable.   In the New York case the assured may well have supposed, the mere shadowy chance he had for maintaining that his policy was in force notwithstanding the claimed default, was of too little consequence to warrant insisting upon it, while here the facts are so plainly conclusive in favor of the position that no lapse had in fact occurred, that it seems the assured could not have intended to waive the certainty for the uncertain outcome of an application for reinstatement, but rather thought he might well avoid a troublesome controversy with respondent by going through the form of complying with its demand without prejudice to his rights, even if the application for reinstatement should be denied, since no pecuniary penalty was involved, as seems to have been the case.   Moreover the letter of the assured accompanying the application for reinstatement, shows upon its face that he recited in such application that the policy

had lapsed, using the printed form supplied by respondent, because the latter had so stated in its communication to him in such a way as to lead to the belief that by the terms of the agency contract he had no right to deduct from the quarterly payment but one fourth of the agency apportionment. He said in such letter:

"I am very sorry to cause you all this trouble but I must have misunderstood my contract. I understood from my policy that I can pay my premiums quarterly if I wish the rate to be $41.35. My contract states that my commissions are payable within thirty days of the anniversary of the date of the policy." (Meaning evidently contract.) "I deducted the total amount ($14.60) after reading this."

Thus the application for reinstatement was made, supposing, as respondent well knew from its attitude, that he had misunderstood the contract. Its letter inferentially stated that the agency apportionment for any year, by the contract, was so payable as to render the whole or only a quarter applicable upon a single premium payment, according as the assured should decide to pay annually or quarterly, which was not the case. This rather rebuts the idea of acquiescence and intention to waive with knowledge, actual or constructive, of the facts.

Without further discussion of the question of waiver, it is the opinion of the court that the law on that subject is in favor of appellant. Such being the case, all questions as to reinstatement of the policy, which were resolved in respondent's favor by court and jury, resulting in the judgment complained of, are immaterial. That leads to the result that, on the undisputed evidence, judgment should have been given for plaintiff as demanded in the complaint upon the motion which was in effect made therefor notwithstanding the verdict, and the case must now take the course which it ought to have taken.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to render judgment in accordance with this opinion.