RICHMOND, Respondent, vs. CONSERVATIVE LIFE INSURANCE COMPANY and another, Appellants.

*November 14—December 4, 1917.*

*Life insurance: Validity of contract: Appointment of insured as local adviser: Discrimination between insurants: Rebates: Enforcement of contract.*

1. A contract appointing a lawyer as local adviser of a life insurance company and providing, among other things, that, in consideration that he will "on written request" furnish the company with information as to the character and habits of applicants for insurance, etc., certain payments will be made to him annually on the premium date of a "20-payment life advance dividend local adv. policy of insurance" for $5,000, which was issued to him as a part of the same general arrangement, is *held* to have constituted discrimination between insurants of the same class and, in effect, a rebate of a part of the premium and an inducement not specified in the policy, in evasion and violation of sec. 1955o, Stats. 1898,—the evidence as to services rendered under the contract being very general and indefinite and not a single written request for information being shown.
2. Such local adviser contract, being in violation of a statute and in contravention of the public policy of the state, will not be enforced so far as it remains executory.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Reversed.*

Action to recover for personal services under a written contract made by plaintiff with the *Conservative Life Insurance Company* April 9, 1903, and afterwards assumed by the defendant the *Pacific Mutual Life Insurance Company.* The defense was that the contract was an illegal contract in that it was in fact a contract for a rebate on a life insurance premium. The action was tried by the court, jury trial having been waived, and the court found in effect that the contract was a *bona fide* contract for services, that valuable services had been rendered under it, and rendered judgment for the plaintiff, from which the defendants appeal.

The facts are these: Both defendants are insurance com-

panies incorporated under the laws of California.    March 31, 1903, the agent of the *Conservative Company,* one White, came to Arcadia, Wisconsin, and obtained from the plaintiff (an attorney residing at that place) two written applications addressed to said insurance company, one being an application for a $5,000 life insurance policy and the other an application for .appointment as "local adviser" of the company. This latter application provided that if appointed he would, on written request, furnish confidential information as to the character and habits of prospective applicants for insurance or for reinstatement, also such information as would tend to protect the company against false and fraudulent claims, but that he was not to solicit insurance or write applications therefor; also that he should not be required to take out a policy of insurance as a condition precedent to appointment.    This application further provided that the compensation for his services was exclusively set out in the contract of appointment, a specimen of which the applicant had examined, and that all compensation should cease on termination of the contract by the company, except that as long as at least $5,000 of insurance placed by the applicant's efforts or assistance remained in force the compensation should be continued.

Soon after receipt of these two applications by the *Conservative Company* it issued and sent to the agent, White, a $5,000 policy of life insurance and a so-called "Contract of local adviser—limited to 300," both dated April 9, 1903. This latter contract or appointment contained the following provisions:

"The *Conservative Life Insurance Company,* of Los Angeles, California, in consideration of the application for this appointment, which application is made a part hereof, does hereby appoint and commission *Frank C. Richmond* of Arcadia, Wisconsin, a local adviser of said company, subject to the insurance statutes and the following express conditions:

"I. The number of said local advisers appointed in the state of Wisconsin shall not exceed 300.

"II. On the first day of February of each year, during the continuance of this contract, the company shall compute the number of thousands of insurance in force written for a period of ten years from and after February 1, 1902, in the state of Wisconsin, upon which there shall have been paid in cash during the preceding year, one full annual premium, two semi-annual or four quarter-annual premiums.

"III. The company further agrees on the dates aforesaid (February 1 in each year) to credit said local adviser with such a sum of money from the expense element of premiums paid on insurance written in said state, during said period, after said date, as shall be obtained by dividing an amount of money equal to one dollar for each one thousand dollars of insurance in force at said dates, written during said period, after February, 1902, by the number of said local adviser's contracts in force at time of such distribution.

"The amount so credited to said local adviser shall each year, on the anniversary of the date of this contract, or within thirty days thereafter, provided this contract be then in force, be paid to him by said *Conservative Life Insurance Company,* subject to the agreements of said local adviser in his application herefor. And said payment shall be in compensation for his services as local adviser and for no other consideration."

The plaintiff, on receipt from Mr. White of the two contracts, executed and delivered to the agent a receipt as follows:

"Arcadia, April 17, 1903.

"Received from the *Conservative Life Insurance Company,* Los Angeles, California, a 20-payment life advance dividend local adv. policy of insurance upon my life, No. 13595, being the same as applied for and satisfactory.

"Policy delivered by W. L. White.    F. C. RICHMOND."

On the anniversary of the policy in each of the years 1904 and 1905 the plaintiff received by way of credit on his premium the compensation specified by the contract and computed according to its terms. In March, 1906, the defendant *Pacific Mutual Insurance Company* took over the business of the *Conservative Company* and assumed its liabilities,

and in April, 1906, by way of credit on the premium, paid the plaintiff the annual compensation provided by the contract. Nothing has been paid since that time because the *Pacific Company* claims that such contracts have in effect been declared illegal by this court. This action is brought to recover the compensation falling due in April, 1908, 1909, 1910, 1911, and 1912. The plaintiff testified that he rendered services continuously at the request of Mr. Thompson, the state agent of the two companies, in accordance with his contract, and describes the services thus:

"When Mr. Thompson would come to Arcadia he would confer with me in regard to the local situation. We talked about prospective insurers, and I gave him the names of people I thought he might be able to get to take out insurance. And he was anxious to secure a local agent at Arcadia. Through my efforts we did finally secure a local agent for the company at Arcadia, and that agent covered a considerable territory in Buffalo county as well as Trempealeau county. I frequently talked with people who were contemplating taking out insurance."

"Court. You allege in the complaint that names of applicants were referred to you as, I take it, for investigation as to their character, etc. Is that a fact? *A.* Well, I was always consulted by Mr. Thompson and by the local agent in regard to applicants for insurance."

For the appellants there was a brief signed by *Flanders & Fawsett,* attorneys, and *John E. Tracy,* of counsel, all of Milwaukee, and oral argument by *Mr. Tracy.*

For the respondent there was a brief signed by *Jesse E. Higbee,* attorney, and *O. J. Swennes,* of counsel, both of La Crosse, and oral argument by *Frank C. Richmond* of Arcadia, *in pro. per.*

Winslow, C. J. At the time of the transaction in question sec. 1955*o,* Stats. 1898, provided as follows:

"No life insurance company doing business in this state shall make or permit any distinction or discrimination in

favor of individuals between insurants of the same class and equal expectation of life in the amount or payment of premiums or rates charged for life or endowment policies, or in the dividends or other benefits payable thereon or in any other of the terms and conditions of the contract it makes; nor shall any such company or any agent thereof make any contract or agreement as to such contract other than as plainly expressed in the policy issued pursuant thereto, nor pay or allow, or offer to pay or allow, as an inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits. to accrue thereon, or any valuable consideration or inducement whatever not specified in the policy."

The section further provided for revocation of the license of any insurance company violating any of its provisions.

The questions in the present case are (1) whether the so-called local adviser's contract was not in fact a discriminating rebate on the premium, or at least a special inducement not specified in the policy of insurance issued at the same time, and (2) if so, can it be enforced.

We are well satisfied that the first question must be answered in the affirmative notwithstanding the contrary conclusion reached by the trial court. Here are the facts. stripped down to essentials: An insurance agent comes to a lawyer with a blank application for an insurance policy in one hand and a blank application for appointment as local adviser in the other. By this latter application (if accepted by the company) certain payments, depending on the policies. in force in the state, will be made to the lawyer annually on the premium day of the policy in consideration that he will, "on written request," furnish information as to the character and habits of applicants for insurance or for reinstatement and also such information as may tend to protect it against false or fraudulent claims. The number of local advisers in the state is not to exceed 300. This application has some. very singular features. The applicant is required not to

solicit or write applications for insurance; he is not *required* to take out a policy of insurance himself, but the appointment may be terminated at any moment by the company, *except* that so long as $5,000 of insurance *placed by* the applicant's efforts or assistance remains in force the compensation shall be continued. This seems confusing at first, but a little study renders it plain. The applicant is not to interfere with the business of regular agents by soliciting insurance; he cannot, therefore, place or assist in placing insurance on any one but himself; consequently, while not in terms required to insure himself, the applicant must keep the insurance on his own life in force in order to be sure that his so-called compensation does not cease, for this is the only insurance which by the contract he is allowed to place or assist in placing.

This application is placed before the plaintiff with the application for insurance unquestionably as an inducement to take out the insurance; both applications are signed at the same time, forwarded to the company together, accepted together, and the policy and appointment returned together and delivered together to the insured. Here comes a significant bit of silent testimony in the wording of the receipt given to the agent by the insured. By this receipt the insured acknowledged that he had received "a 20-payment life advance dividend local adv. policy of insurance." Now if the appointment as local adviser is an independent contract of service having nothing to do with the insurance policy, why should the insurance policy be described as an "advance dividend local adv. policy?" We know of no good reason that can be given. This phrase, written by the insurer and signed by the insured, seems to make it very sure that both parties regarded the local adviser contract and the insurance policy to be simply parts of one general arrangement by whose terms the plaintiff's life was insured and certain sums

were to be paid him every year for certain vague and indefinite services by giving him a credit on the premium, so long as he kept the insurance on his own life in force but no longer.   This is the kind of an insurance contract which the insurance company made with the plaintiff, and which it proposed to make with a class of favored individuals not exceeding 300 in number in the state.

Perhaps, if it appeared that the services to be rendered were solid and substantial services thoroughly proven, this sort of an arrangement might not be obnoxious to the law, but we are convinced that they were not so.   The requirements as to the furnishing of information are of the most vague and shadowy character.   Under the terms of the contract it is to be furnished on written request, but the insured is unable to produce a single written request; he makes simply the most general and indefinite statements as to the character of his services, and only in one instance does he name a definite item of service, namely, assisting in securing a local agent at Arcadia, and this was a service entirely outside of the duties required of him by the contract.

The law denounces not only discrimination or distinction between insurants of the same class, but the giving of any rebate on premiums or of any special favor or advantage in the dividends or other benefits to accrue on the policy or any valuable consideration or inducement not specified therein.

It seems to us that it is absurd to claim that the substitution of occasional and easy consultative services in place of a substantial part of the cash premium does not constitute discrimination between insurants of the same class, and equally absurd to claim that it is not to all intents and purposes a rebate of a part of the premium and an inducement not specified in the policy.   To hold this arrangement valid would, as it seems to us, be offering a reward for skilful legal *camouflage*.   The intent of the statute was to place all insurants of the same class and equal expectation of life on

exactly equal footing. That intent should not be defeated by transparent evasions like the present. *State Life Ins. Co. v. Strong,* 127 Mich. 346, 86 N. W. 825; *Urwan v. Northwestern Nat. L. Ins. Co.* 125 Wis. 349, 103 N. W. 1102. The circumstances showing the intent in the present case are much stronger than they were in the case of *McNaughton v. Des Moines L. Ins. Co.* 140 Wis. 214, 122 N. W. 764, a case much relied on by the respondent.

Proceeding to the second question, namely, whether this local adviser contract can be enforced, there seems but one answer possible, namely, in the negative. If our conclusion as to the facts is correct, the law forbade the making of the contract at all, and shall the law enforce the performance of a contract which the law itself forbids? The law may well, as in the *Laun Case* (*Laun v. Pacific Mut. L. Ins. Co.* 131 Wis. 555, 111 N. W. 660), hold valid the contract of insurance, which on its face is perfectly legal and if enforced violates no law, but it by no means follows that the accompanying contract which violates a statute and contravenes the public policy of the state will be enforced so far as it still remains executory. The rule is to the contrary. *Menominee River B. Co. v. Augustus Spies L. & C. Co.* 147 Wis. 559, 132 N. W. 1118; *Kilbourn City v. Southern Wis. P. Co.* 149 Wis. 168, 135 N. W. 499; *Smathers v. Bankers L. Ins. Co.* 151 N. C. 98, 65 S. E. 746.

*By the Court.*—Judgment reversed, and action remanded with directions to dismiss the complaint.

ROSENBERRY, J., took no part.