[Civil No. 1944. Filed May 31, 1923.]

[215 Pac. 536.]

# WESTERN UNION LIFE INSURANCE COMPANY, a Corporation, Appellant, v. VOLLIE C. MUSGRAVE, Appellee.

1. INSURANCE—EVIDENCE HELD INSUFFICIENT TO ESTABLISH INSURANCE SALESMAN'S AUTHORITY TO PROMISE LOAN BY COMPANY.—Evidence *held* insufficient to establish an insurance agent's authority to promise a prospective policy purchaser that, in consideration of his purchase the company would make a loan to him.

2. INSURANCE—INSURANCE COMPANY HELD NOT OBLIGATED TO MAKE LOAN PURSUANT TO SALESMAN'S PROMISE.—Where an insurance salesman, without authority, has promised a prospective policy purchaser that, in consideration of his purchase, the company would make him a loan on certain realty, the company, by accepting the application for insurance and issuing the policy without notice of the salesman's promise, does not become bound to make the loan.

3. INSURANCE—CONTRACT TO MAKE LOAN IN CONSIDERATION OF PURCHASE OF POLICY INVALID UNDER STATUTE.—A contract by an insurance company that, in consideration of the purchase of a policy, it would make a loan to the purchaser on real estate owned

---

2. Breach of agreement of insurer to make loan on policy as justifying rescission and recovery of premiums by insured, see note in 30 L. R. A. (N. S.) 1202.

See 32 C. J., pp. 1058, 1059, 1112, 1167.

by him would be invalid, under Revised Statutes of 1913, paragraph 3449, as to discrimination.

4. INSURANCE—CONTRACT TO MAKE LOAN IN CONSIDERATION OF PURCHASE OF POLICY WOULD BE INVALID.—A contract by an insurance company to make a loan on realty in consideration of the purchase of a policy would be void, under Revised Statutes of 1913, paragraph 3400, which in effect provides that no investment or loan except loans on its own policies shall be made by an insurance company, unless first authorized by board of directors or committee charged with making loans.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Reversed.

Messrs. Kibbey, Bennett, Gust & Smith and Messrs. Graves, Kizer & Graves, for Appellant.

Mr. Carl A. Davis, for Appellee.

LYMAN, J.—This action is to recover damages for breach of an alleged oral executory contract to loan $16,000, which the appellee, Musgrave, claims was made with him by one Brice, as agent of the appellant, Western Union Life Insurance Company, a Washington corporation, and by which he was induced to buy a life insurance policy in the appellant company. The policy was issued and paid for with cash and promissory notes, but the loan was not consummated. In the contract of insurance, including the application and the policy, no reference is made to the loan. The agent, Brice, had no authority, real or apparent, to promise the loan, and the insurance company had no knowledge of any such promise until after the contract of insurance was closed. Subsequently, appellee filed with the insurance company his application for a loan of $16,000, offering to secure it by mortgage upon real estate. The application was apparently accepted, but only for $12,000, which was declined by Musgrave because the form of mort-

gage tendered did not suit him. The case was submitted to a jury upon this state of facts, and a verdict was returned in favor of plaintiff, upon which judgment was rendered.

Manifestly the judgment has nothing upon which to rest. The contract counted upon as the basis of the action was never made, and, if it had been made, it could not be enforced.

All of the evidence of the transaction out of which it is claimed the contract grew is found in the testimony of Musgrave, the appellee, and Brice, the agent. Concerning the agency of Brice to bind his company to make the loan, this question was asked of Musgrave, "Now, you knew when Mr. Brice made you the first promise that you would have to make the application to the home office for this loan, didn't you?" to which he answered, "Yes, sir." If the ultimate authority to make the contract was understood by Musgrave to rest in the "home office," and that application would "have to be made" there, as appears from this question and answer, it could not have been understood to be vested in Brice. Concerning the same subject, Brice, who was called as a witness for the appellee, upon cross-examination was asked this question, "So when the question came up of recommending a policy upon Mr. Musgrave's life, did you tell him that the company would make loans on Arizona security, and that, if it found his property suitable for the amount of the loan, that it would make it? Was that about the nature of your conversation?" to which he answered, "Yes; if the company approved the loan, they would make the loan if the valuation was all right, the titles, etc. I could not make loans." Application was accordingly made to the home office by Musgrave for the loan, but not until some months after the life insurance policy had been issued and delivered to him.

Under these circumstances there is no uncertainty as to the scope of Brice's agency in the premises. Nor does the question of apparent authority of the agent to make the contract in question arise. If this action can be maintained, it must be upon some other basis than the authority of Brice to bind his company to make the loan.

It is claimed that, since the appellant accepted the application of insurance and issued its policy to Musgrave, it is somehow bound to make the loan which Brice, though without authority, had promised, because Musgrave says he took the insurance solely for the purpose of getting a loan, and so told Brice. This position is obviously untenable. The application of insurance made no mention of any loan, and no one authorized to bind the insurance company by promise to loan money had notice of any such negotiation until long after the policy of insurance had been issued. The premium paid for the insurance did not exceed the usual and prescribed rates for such insurance. Musgrave got all he paid for, the insurance company gave all it agreed to give.

Then, too, the statute forbids it. Both the state of Washington, in accordance with whose laws the appellant company was incorporated, and the state of Arizona, where it was then doing business and the contract of insurance was made, have surrounded the beneficiaries of insurance policies with statutory safeguards regulating the methods by which insurance companies shall carry on their business. The statutes of Arizona have this provision, which is substantially a counterpart of the Washington statute (Rem. Code, § 6059—180):

"No life insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals, between insurance of the same class and equal expectation of life, in the amount or payment of premiums or rates charged for

policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any company or agent . . . make any contract of insurance or agreement as to such contract, other than as plainly expressed in the policy issued thereon; nor shall any such company or agent, . . . pay or allow, or offer to pay or allow, as inducement to insurance, any rebate of premiums payable on the policy, or any special favor or advantage in the dividends or other benefits to acrue thereon, or any other valuable consideration or inducement whatsoever not specified in the policy contract of insurance. . . .

"No person shall receive or accept from any company or agent, subagent, broker, or any other person any such rebate or premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement not specified, in the policy of insurance." Rev. Stats. Ariz., par. 3449.

It is evident that, had the insurance company made the contract with which it is charged, it would have been obnoxious to this statute, and void. It will be noted that the prohibition to enter into such contract is not only imposed upon the insurance company, but that it is also explicitly directed to the other party to such a contract, who in this instance is Musgrave.

The contract for a loan, alleged to have been made by Brice, as agent, was not "expressed in the policy," and assumed to give the assured a "special favor and advantage not specified in the policy," and which the assured, Musgrave, was by this law forbidden to "receive or accept." This special favor which the law forbids, the court is asked to give. The proposition is unsavory. A contract in violation of this and similar laws will not be enforced. *Moser* v. *Pantages,* 96 Wash. 65, 164 Pac. 768; *Morris* v. *Ft. Worth Life Ins. Co.* (Tex. Civ. App.), 200 S. W. 1114; *Gause* v. *Security Life Ins. Co.* (Tex. Civ. App.), 207 S. W.

346; *Levinson* v. *Boas,* 150 Cal. 185, 11 Ann. Cas. 661, 12 L. R. A. 575, 88 Pac. 825; *Urwan* v. *Northwestern Nat. Life,* 125 Wis. 349, 103 N. W. 1102; *Richmond* v. *Conservative Life Ins. Co.,* 166 Wis. 334, L. R. A. 1918D, 190, 165 N. W. 286; *State Life Ins. Co.* v. *Strong,* 127 Mich. 346, 86 N. W. 825; *Smathers* v. *Bankers' L. Ins. Co.,* 151 N. C. 98, 18 Ann Cas. 756, 65 S. E. 746; *Equitable Life Assur. Soc.* v. *Wetherill,* 127 Fed. 947, 62 C. C. A. 579; *Heffron* v. *Daly,* 133 Mich. 613, 95 N. W. 714; *National Life Ins. Co.* v. *Anderson,* 122 Ky. 794, 92 S. W. 976; *Thomson* v. *McLaughlin,* 13 Ga. App. 334, 79 S. E. 182; *People* v. *Commercial Life Ins. Co.,* 247 Ill. 92, 93 N. E. 90.

There is another insuperable obstacle to the enforcement of such a contract, as the appellee has sought to establish, found in the provision of the statute of the state of Washington which governs the operations of the appellant company wherever it may do business. Section 6059—23, Rem. & Bal. Code of Washington, as amended by chapter 34, Session Laws of the state of Washington for the year 1915. This statute is in accord with the laws of this state (Rev. Stats. Ariz., par. 3400), and in effect provides that no investment or loan, except loans upon its own policies, shall be made which has not first been authorized by the board of directors, or by a committee thereof charged with the duty of investing or loaning the funds of the company, and that loans upon the security of real property shall not exceed fifty per cent of the value of the mortgaged property, exclusive of buildings, unless such buildings are insured and the policy transferred to the company, and which must be unencumbered. There is no pretense on the part of the appellee that the contract which he seeks to enforce was ever authorized by the board of directors, or by any committee of the appellant company. The assets of a life insurance company are for the benefit of policy-holders. Paragraph 3433, Rev. Stats. Ariz.

The evidence in this case illustrates the wisdom and beneficence of such a limitation upon the power of a life insurance company to make investments. If any solicitor could barter away to irresponsible borrowers the funds to which policy-holders look for their security, there would be little left for the beneficiaries.

This statute too has been enforced and given effect to whenever it has been invoked in a proper case. *Head* v. *Providence Ins. Co.,* 2 Cranch, 127, 2 L. Ed. 229 (see, also, Rose's U. S. Notes); *Ohio Ins. Co.* v. *Nunnemacher,* 15 Ind. 294; *Leonard* v. *Insurance Co.,* 97 Ind. 299; *Presbyterian Assur. Fund* v. *Allen,* 106 Ind. 593, 7 N. E. 317; *Beatty* v. *Insurance Co.,* 2 Johns. 109, 3 Am. Dec. 401; *Root* v. *Goddard,* 20 Fed. Cas. 1159; *Hackensack Water Co.* v. *DeKay,* 36 N. J. Eq. 548; *Paul* v. *Seattle,* 40 Wash. 294, 82 Pac. 601.

Other errors are assigned to the rulings of the court, but the questions of law involved are elementary, a discussion of which would be of no value. Such errors grow out of the confusion of a trial.

The judgment will be reversed and the cause returned to the trial court.

McALISTER, C. J., and ROSS, J., concur.